BRINKMAN v. HUNTER, *et al., Appellants.*

1. **Pleading**: ONE CAUSE OF ACTION STATED IN TWO COUNTS: ELECTION. Plaintiffs sued upon a written promise to pay a draft. Their petition was in two counts. In the first the writing was declared on as an acceptance of the draft. In the second they sued for a breach of the promise to accept. The trial court refused to compel them to elect on which count they would proceed. *Held,* no error.

2. **Over-draft**: WHAT IS NOT A PARTIAL ACCEPTANCE, WHAT IS. A promise in writing to pay a draft to be drawn for a sum named, is an authority to draw for that sum and no more. If the draft be drawn for more, the promisor will not be bound to pay any part of it. The rule is otherwise in the case of a draft in existence at the time the promise is made. In such case the promise will be treated as a partial acceptance, and the promisor will be bound to that extent.

3. **Promise to Accept.** Section 537, Revised Statutes 1879, does not affect the rights of parties to a written promise to accept a draft. It is confined in its operation to verbal promises.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*F. M. Black* for appellants.

1. Plaintiffs should have been compelled to elect upon which count they would proceed to trial. *Clements v. Yeates,* 69 Mo. 625; *Ahern v. Collins,* 39 Mo. 145; *Ford v. Mattice,* 14 How. Pr. 91; *Sturges v. Burton,* 8 Ohio St. 215; *Nash v. McCauley,* 9 Abb. Pr. 159; *Ferguson v. Gilbert,* 16 Ohio St. 88, 91.

2. If the telegram be treated as a promise in writing so as to come within the statute, (R. S. 1879, § 535,) still it cannot be deemed an acceptance of the draft, because the draft was for $680.92, another and different amount from that specified in the telegram. To be such an acceptance the promise to accept must describe the bill in terms not to be mistaken and the bill must correspond therewith. 1 Parsons on Notes and Bills, p. 293. Some

authorities hold that if the bills are definitely described in the promise to pay, such promise is to be taken as a virtual acceptance, but if not so definitely described and the bills still be within the authority of the promise, an action may be maintained for breach of promise to accept, while others hold that so long as the bills are within the bounds of the promise, they may be treated as accepted bills. 1 Parsons on Notes and Bills, 296, 297, 298; 1 Dan. on Neg. Inst., §§ 560, 561, and authorities there cited. But in either case the correspondence of the bills with the promise must be proved. In this case the promise was: "Will pay Clark & Goldsby's draft for $608,92." The draft drawn was for $680.92, and the whole of this demanded, nothing less. No draft for $608.92 has ever been drawn or presented to defendants. How can there be a breach of promise? The promise itself implies that Clark & Goldsby shall make a draft, and this draft is to be for a defined amount. Until these precedent conditions are complied with, there can be no breach of the promise.

3. The telegram was specific and definite, and if the draft had corresponded therewith, would have been deemed an acceptance by force of the statute. It not being an acceptance for want of compliance with the telegram, how can it be held to be a promise to pay another and a different draft? It must be an acceptance, or, as to the draft in question, amount to nothing.

*Lathrop & Smith* for respondents.

1. The court did not err in refusing to require plaintiffs to elect. Bliss Code Plead., § 120; *Cary v. R. R. Co.*, 60 Mo. 209.

2. The recovery was had upon the second count in the petition which was for damages for breach of promise to accept the bill drawn. 1 Wag. Stat., p. 215, § 5. Authorities upon the point that in order to constitute an acceptance the bill drawn must conform in all particulars to

the prior promise are inapplicable.    In actions for damages
for breach of promise to accept, " the evidence may be of
a more general character, and the authority to draw may
be collected from circumstances and extended to all bills
coming fairly within the scope of the promise."    Edwards
on Bills, 413.; 1 Parsons on Notes and Bills, 298 ; Story on
Bills, § 462 ; *Boyce v. Edwards*, 4 Peters 111, 122 ; *Lons-
dale v. Lafayette Bank*, 18 Ohio 126 ; *Valle v. Cerre*, 36 Mo.
575, 590 ; (1) The telegram of defendants was a sufficient
promise in writing to satisfy. the statute.    14 Am. Law
Reg. (N. S.) 401 ; *Molson's Bank v. Howard*, 40 N. Y. Sup.
Ct. (Jones & Spencer) 15.    (2) Partial acceptances are valid
and binding.    *Wegerstoffe v. Keene*, 1 Strange 214 ; Ed-
wards on Bills, 419 ; Byles on Bills, *194.    Consequently,
an action must lie to recover damages for breach of prom-
ise to accept, where the amount of the bill exceeds the
amount named in the promise.    Damages to the amount
of the promise may be recovered.    (3) Defendants cannot
escape by saying that no bill for $608.92 was ever drawn
upon them.    The one named in the petition was the only
one drawn, and it was drawn and negotiated within a reas-
onable time after the promise, and corresponded sufficiently
with the telegram to show that it was drawn and nego-
tiated upon the faith of it.    The mere transposition of the
figures from $608.92 to $680.92, ought not to defeat a re-
covery.    Defendants were not injured by such transposition.
If they had offered to accept the bill to the extent of
$608.92, or to pay that amount upon it, and the plaintiffs
had refused to receive it, they might have some reason now
in declining to pay.    But as they never did make that
offer, and as plaintiffs only ask the $608.92 which defend-
ants had promised to pay and which plaintiffs relied upon
in negotiating the bill, the judgment ought to be affirmed.

HOUGH, J.—The amended petition upon which the case
was tried, contains two counts.    The first count states in
substance that on the 23rd day of September, 1875, Clark

& Goldsby drew their draft on defendants for $680.92 in favor of plaintiffs by the name of Samuel Maher, cashier; that before that time, and on the 20th day of September, defendants, by their unconditional promise in writing, had agreed with plaintiffs to accept and pay the same to the extent and amount of $608.92; that said promises were made by telegraph; that on the faith of said promises, plaintiffs received said draft for a valuable consideration, and are the owners thereof, and that said draft was presented for payment and payment refused, and plaintiffs ask judgment for $608.92 and interest. The second count states that on the 20th day of September, 1875, defendants sent to plaintiffs a telegram as follows: "Kansas City, Missouri, September 20th, 1875. We will pay Clark & Goldsby's draft for $608.92. Hunter, Evans & Co.;" that plaintiffs received the same on that day; that on the 23rd day of September, Clark & Goldsby drew their draft for $680.92 in favor of said cashier, describing it as aforesaid; that plaintiffs, on the faith of said telegram, advanced more than $608.92, and became the owners and holders thereof in good faith; that defendants refused to accept or pay said draft; that by the breach of defendants' said promise they have been damaged in the sum of $608.92, and for which, with interest, they ask judgment. The answer of defendants is a general denial. Defendants, at time of trial, filed their motion to require the plaintiffs to elect upon which count they would proceed, for the reason that there was but one cause of action stated in two counts. This motion the court overruled and defendants excepted.

The cause was submitted on an agreed state of facts and the deposition of plaintiff Maher. The facts as agreed upon are as follows: The plaintiffs were and still are partners, doing a banking business at Great Bend, in the state of Kansas, and Samuel Maher is the cashier of their banking firm. The defendants were live stock commission merchants, doing business at Kansas City, Missouri. Clark & Goldsby, were, at the time of the transaction in contro-

versy, buying and selling cattle, and were also known by the firm name of Clark, Goldsby & Co. Clark & Goldsby, on the 20th day of September, 1875, applied to plaintiffs, at Great Bend, to have their draft on defendants cashed. Plaintiffs said they would cash a draft on a telegram from the defendants. Thereupon, and on that day, Clark & Goldsby sent to defendants a telegram, which is as follows:

To HUNTER, E. & Co.:

Telegraph to J. V. Brinkman & Co., to advance us proceeds of last shipment. We need it. Give market. Will ship if possible.

CLARK, GOLDSBY & Co.

On the same day and in reply thereto, defendants sent from Kansas City to plaintiffs, at Great Bend, a telegram, as follows:

To J. V. BRINKMAN & Co., Great Bend, Kansas:

We will pay Clark & Goldsby's draft, six hundred eight dollars ninety-two cents.

HUNTER, EVANS & Co.

Plaintiffs did not see Clark & Goldsby again until the 23rd day of said month, when they informed them of the receipt of said last mentioned telegram, and thereupon Clark, Goldsby & Co. drew the draft sued upon and attached to the petition in this cause on the defendants for $680.92, and which plaintiffs discounted and paid Clark, Goldsby & Co. a valuable consideration therefor, and more than $608.92.

On the 23rd day of September, 1875, Clark & Goldsby sent to defendants a telegram from Great Bend, as follows:

To HUNTER, E. & Co.:

Turn over to Powers, Rial & Co. the amount which you have to our credit.

CLARK & GOLDSBY.

Which telegram was received by the defendants on that day. Indorsed on the same is, "complied with." Plaintiffs forwarded said draft to the Mastin Bank of Kan-

sas City, Missouri, for collection, and the same was, on the 25th day of September, 1875, presented to defendants for payment, and payment of the amount of the draft was demanded of them, which they refused to pay, and never have paid the same. Before the presentation of the draft to the defendants, to-wit: on September 24th, 1875, they had paid over the amount to the credit of Clark & Goldsby, to-wit: $608.92, to Powers, Rial & Co. On the 29th day of September, 1875, plaintiffs wrote to defendants a letter as follows:

GREAT BEND, KANSAS, September 29th, 1875.
HUNTER, EVANS & Co., Kansas City, Missouri:

*Dear Sir*—Mastin Bank, of your city, returned to us unpaid a draft drawn by Clark, Goldsby & Co. on you for $680.92. This money was paid to C., G. & Co. by us upon receipt of a telegram from you that their draft upon you was good for that amount. We, therefore, consider you liable to us for that amount, and in case we meet with a loss will endeavor to recover of you. It is sometimes convenient for shippers to get money here on such terms as did C., G. & Co. But if the commission men, after telegraphing that they will pay a fixed amount upon a draft, pay the money out on other accounts, we cannot make such advances.

Very respectfully,
SAMUEL MAHER, Cashier.

Defendants again declined payment of the draft. No draft for $608.92 has been drawn on defendants by said Clark, Goldsby & Co., nor any other draft for any amount, except the one sued upon.

The deposition of Maher, plaintiff, shows: that Clark & Goldsby were operating in cattle in the vicinity of plaintiff's place of business; they were known by the plaintiff and some times signed their firm name "Clark & Goldsby," at other times "Clark, Goldsby & Co.;" that plaintiff received telegram from Hunter, Evans & Co. on the 20th day

of September; that the draft was not made until the 23rd day of September; that plaintiff had not seen Clark & Goldsby from the 20th to the 23rd day of September; that Clark & Goldsby still wanted the money, and thereupon the witness drew the draft for $680.92, instead of $608.92; that he made a mistake as to amount specified in the telegram, and that the draft was sent to a bank in Kansas City for collection.

The defendant asked the court to declare the law as follows: Upon the facts agreed upon in this cause, the finding of the court should be for the defendants on both alleged causes of action. This instruction the court refused to give, and the defendants excepted.

The court gave the following instruction at the request of the plaintiffs: If the court, sitting as a jury, believe from the evidence that defendants sent the plaintiffs a telegram promising to pay Clark & Goldsby's draft for $608.92; that said telegram was received by plaintiffs; that upon the faith thereof the plaintiffs negotiated the bill of exchange filed with the petition in this cause, and that the defendants refused to accept said bill, the finding will be for the plaintiffs in such sum as the evidence shows them to have been damaged, not to exceed $608.92—to the giving of which the defendants excepted. The court found for the defendants on the first count, and gave judgment against them for $673.59 on the second count, and they have appealed to this court.

The circuit court committed no error in refusing to compel the plaintiffs to elect upon which count of the petition they would proceed. It is well settled in this State that the provision of the code requiring the plaintiff to set forth in his petition " a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition," does not prohibit the statement of a single cause of action in different counts, for the purpose of so varying the form of the statement as to meet any possible state of the proof.

1. PLEADING: one cause of action stated in two counts.

*Brownell v. P. R. R. Co.*, 47 Mo. 243: *Brady v. Connelly*, 52 Mo. 19; *City of St. Louis v. Allen*, 53 Mo. 49; *Owens v. Hannibal & St. Joseph R. R. Co.*, 58 Mo. 386, 394. So where two distinct and different claims are based upon the same instrument, although the plaintiff may be entitled only to a single satisfaction, both may be stated in the same petition, and should, of course, be stated in different counts. *Byrdseye v. Smith*, 32 Barb. 217; Bliss on Code Plead., § 120. In neither case can the court compel the plaintiff to elect upon which count he will proceed.

We will consider the counts in the order presented. In the first count the telegram of the defendants is declared

2. OVER-DRAFT: what is not a partial acceptance, what is.

upon as an acceptance by them for the sum of $608.92. In the second count the plaintiffs sue for a breach of the promise to accept contained in the telegram. The telegram of the defendants is a promise in writing within the meaning of our statute relating to the acceptance of bills of exchange. *Molson's Bank v. Howard*, 40 N. Y. Sup. Ct. 15; *Central Savings Bank v. Richards*, 109 Mass. 414; Am. Law. Reg., (N. S.) vol. 14, 401. The plaintiffs having received the bill in question for a valuable consideration on the faith of the defendants' promise, the question is, can the promise be construed to be an acceptance of the bill sued on. There is no doubt that partial, or qualified acceptances are good, and will bind the acceptor. This was decided as long ago as the year 1720 in *Wegerstoffe v. Keene*, 1 Strange 214; *Vide* Edwards on Bills, 419; Byles on Bills, 194; and if the draft for $680.92 had already been drawn and the defendants been notified of that fact, and that it had been offered to the plaintiffs, we think their telegram could very properly be held to refer to the draft drawn, and be construed to be a partial acceptance thereof; that is, an acceptance thereof for the sum of $608.92. But inasmuch as no draft had then been drawn, we do not see how a promise to accept, or what is the same thing, to pay at maturity, a draft to be drawn for $608.92, can be held to be a promise to pay.

a draft for $680.92, or to pay $608.92 on a draft for $680.92, any more than it could be construed to be a promise to pay such sum on a draft for $1,000 or for $5,000. It seems to us that if the promise would be binding in one case, it would be in the other. If it be permissible to make any departure from the amount named in the promise, we do not see on what principle a limit is to be fixed which cannot be transcended. The equitable appropriation, so to speak, to the use of the drawer of the sum named in the promise would appeal to us as strongly, if the draft were for $5,000 as it does now. And it could be said with as much force in the one case as in the other, that the payee expected and intended to look to the drawer for the excess.

If, then, the telegram of the defendants to the plaintiffs and on the faith of which they took the draft sued on, cannot be construed to be a partial acceptance of such draft, can the plaintiffs maintain an action for a failure to accept such draft for the sum named in the telegram? When a bill is received on the faith of a promise in writing to accept the same, before it is drawn, the promise at once takes effect, under the statute, as an acceptance, and if the party promising refuses to pay at maturity, it is quite plain that no action can be maintained for a refusal to accept, but the action must be brought for a refusal to pay according to the terms of the acceptance. Now, if the promise to accept cannot take effect as an acceptance under the statute, for the reason that it cannot be held to refer, or be applicable, to the bill in question, then we are wholly at a loss to perceive how the defendants can be held liable for a refusal to accept such bill; for if it were the bill they promised to accept, the promise itself would constitute an acceptance. We are aware that there are cases holding that when the bill to be drawn is so indefinitely described that the promise will not amount to an acceptance, still an action may be maintained for a breach of promise to accept. But these cases are said by high authority to rest on a distinction without a difference. Dan-

iel on Neg. Inst., § 561; *Bissell v. Lewis*, 4 Mich. 450; *Nelson v. First National Bank*, 48 Ill. 39.

Section 537 of the Revised Statutes, is not applicable to the case at bar.  That section is confined in its operation to verbal promises to accept, which, but for its provisions might in view of the requirement of other sections of the statute, that all acceptances should be in writing, be regarded as of no validity whatever in favor of any one, and may include such promises in writing as are not communicated to the holder; and it saves a right of action to such persons only as shall have drawn or negotiated a bill on the faith of such promise.  In the case of *Flato v. Mulhall*, 72 Mo. 522, we held, on the authority of *Blakiston v. Dudley*, 5 Duer 373, that the advancement of money by the payee of a draft to the drawer thereof, is not such a negotiation of the draft by the payee as is contemplated by this section.  So that the plaintiffs who cashed the draft for the drawer can maintain no action under this section.

*(margin: 3. PROMISE TO ACCEPT.)*

The peculiar circumstances of this case make it one of great hardship upon the plaintiffs, but we do not see that we can grant them any relief without unsettling the well established principles of commercial law:  The court erred in giving the instruction asked by the plaintiffs and in refusing that asked by the defendants.  The judgment must be reversed.  The other judges concur.