# CASES DETERMINED

IN THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

### MARCH TERM, 1890.

LINUS SANFORD, Ex'r, etc., of JOHN ALBERT, Deceased,
Respondent, v. CAPE GIRARDEAU AND SOUTH-
WESTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, March 18, 1890.**

**Quantum Meruit.** In an action of *quantum meruit* for services
rendered, a recovery is not warranted in the absence of evidence
either of the reasonable value of the services or of a special con-
tract fixing the rate of compensation. The evidence in this cause
considered, and *held* by a majority of the court not to support the
verdict.

*Appeal from Cape Girardeau Court of Common Pleas.*
HON. MAURICE CRAMER, Judge.

REVERSED (*nisi; Judge Biggs dissenting*).

*Wilson & Whitelaw,* for the appellant.

*Linus Sanford, pro se.*

(15)

THOMPSON, J., delivered the opinion of the court.

The petition contains what purports to be two counts. The first count is on a *quantum meruit*, to recover for the value of services rendered by the plaintiff's testator, at the special instance and request of the defendant, in procuring donations of money and lands to aid in the construction of the defendant's railroad, and also in circulating petitions among the citizens of Stoddard county, and thereby inducing the county court of Stoddard county to consent to a conveyance by the Cape Girardeau and Bloomfield Gravel and Macadamized Road Company to the defendant of eleven thousand, six hundred and twenty-nine acres of land, which the county court had donated to the gravel road company. The second count was drawn on the idea of stating a cause of action on a special contract, but it fails to state any such cause of action. It recites that on the twenty-eighth of April, 1881, the plaintiff (meaning, no doubt, the plaintiff's testator) submitted to the defendant a proposition in writing, therewith filed and marked Exhibit A., which proposition the defendant then and there accepted, and authorized *this plaintiff* to commence work under such contract. It then sets out the rendition of the services as they are set out in the preceding count, and concludes as follows: "That this defendant has failed, neglected and refused to pay this plaintiff ten per cent. of the subscription thus obtained, or any other sum; that the subscriptions obtained, as herein set out, are reasonably worth the sum of twenty-five hundred dollars, and that the plaintiff's commissions on said sum in accordance with his agreement would be the sum of twenty-five hundred dollars, and for which amount, with costs of suit, he asks judgment." This second count nowhere states, except inferentially as last quoted, that the defendant agreed to pay the plaintiff a commission of ten per cent. on the

Sanford v. The Cape Girardeau & S. W. Ry. Co.

money and lands which he should procure to be donated to the defendant. The most that can be said for this second count is that it might possibly stand as a count for the reasonable value of the services therein described. The answer was a general denial and a plea of the statute of limitations. The defense of the statute of limitations may be laid out of view, because it does not form the subject of an assignment of error. The plaintiff recovered a verdict and judgment, and the defendant prosecutes this appeal, and assigns several errors, among which are a want of evidence to sustain the verdict.

There was no evidence of the reasonable value of the services, except so far as they were fixed by the terms of a special contract, which no doubt was the contract which the plaintiff intended to plead in the second count of the petition. The only evidence of this contract was furnished by an extract from the defendant's answer in the former action between the same parties upon the same subject-matter. That answer recites that the contract under which, if at all, the plaintiff is entitled to recover, was "a certain contract made and entered into by and between John Albert and this defendant on or about the twenty-ninth day of April, 1881, by which it was contracted and agreed that the said Albert was to engage in soliciting subscriptions for the purpose of the extension of defendant's road from Delta to Lakeville in Stoddard county, Missouri, and to do such other matters pertaining thereto to the best of his ability, and for the interest of the road, for a commission of ten per centum on all subscriptions made or obtained by him, to be paid on the delivery of the subscription notes and title bonds of realty, by note or notes from defendant," etc. As to the amount of services performed by the plaintiff's testator under this contract, the answer admits that he procured donations of money and land to the amount of eight hundred and

fifty dollars, upon which he was entitled to a commission of ten per cent.; it also recites that he presented to the defendant his account, for the sum of eighty-eight dollars and twenty-five cents for his traveling expenses, and that the defendant paid him seventy dollars on account thereof, leaving a balance of eighteen dollars and twenty-five cents which the defendant is ready and willing to pay. The testimony of Mr. Wheeler, the defendant's secretary, who had charge of the defendant's records, was to the effect that all the money which the defendant ever collected on notes procured by the plaintiff's testator amounted to six hundred and seventy-one dollars. His statement of the expense account was, however, exactly as stated in the defendant's answer, in the former suit. We take it that the plaintiff was entitled to recover, on any theory, the amount due him as solemnly admitted by the defendant in its answer in the former suit, no payments having been either pleaded or proved; and we must, therefore, hold that the plaintiff was entitled to a judgment in the sum of one hundred and three dollars and twenty-five cents under the undisputed evidence.

But the judgment, which the plaintiff recovered, amounted to the sum of twelve hundred and seventy-four dollars and ninety cents, and the great excess over the amount, which the undisputed evidence shows to be due, is to be accounted for on the assumption that the jury found that, under the contract which the plaintiff attempted to plead in the second count of his petition, and which he proved by the quotation from the defendant's answer in the former suit above given, he rendered services to the defendant of the difference in value between what was undoubtedly due him, as above stated, and what the jury found, in procuring for defendant a conveyance by the gravel road company of eleven thousand, six hundred and twenty-nine acres of land, as stated in both counts of his petition. We

are unable to find substantial evidence in the record to
support such a finding.

It appears that there was a company called the
Cape Girardeau and Bloomfield Gravel and Macadam-
ized Road Company, to which the county court of
Stoddard county had donated twenty thousand acres
of swamp lands.   It also appears from the plaintiff's
petition that the county court of Stoddard county had
subscribed for eight thousand shares of the capital
stock of this gravel road company.   It is then shown
that on July 5, 1881, the county court of Stoddard
county made the following order of record :   " Ordered
by the court, that, whereas application has been made
by the Cape Girardeau Railroad Company to the county
court of Stoddard county, Missouri, requesting that it
should relinquish all its claim and interest of whatsoever
nature to the Cape Girardeau and Bloomfield Macad-
amized and Gravel Road Company, so that said gravel
road company may be enabled to grant the remaining
portion of about twenty thousand acres of land donated
by this county to said gravel road company, amounting
to about thirteen thousand acres, said gravel road com-
pany agreeing, in lieu of said relinquishment, to quit-
claim the bridge across Castor river and all other interest
they may have in Stoddard county, Missouri, to said
county, and they further agree to convey said land to
said railroad company above named, so as to enable it
to build the same to Lakeville, in Stoddard county; and
it being further agreed that the said conveyance by
said county is to be made by her trustee, and not to go
into force or become valid or binding until said railroad
shall have reached Lakeville,—it is, therefore, ordered
by the court, that, if a majority of the taxpayers shall
petition this court to so relinquish her said interest
aforesaid, by the next regular term of this court,
the same will be so ordered by this court."   It should
be stated that the Cape Girardeau Railroad Company,

mentioned in this order, was the same company as the present defendant, there having been a change of name.

This order of the county court of Stoddard county implies, from its very terms, that negotiations leading up to it had taken place between three persons; the gravel road company, the railroad company and the county court. It may be imagined that some consideration moved from the railroad company to the gravel road company to secure the relinquishment by it of such a great quantity of land, but what this consideration, if any, was, does not appear. But it does appear from the order that a new and distinct consideration moved from the railway company to the county court, to induce the county court's assent to the arrangement, which consideration was that the railroad company should not acquire title to the lands until its railway should have reached the town of Lakeville. It, therefore, undertook, in order to procure such title, to build its road to that point. There is no evidence whatever that the plaintiff's testator had anything to do with any negotiations leading up to this arrangement. All that he did was to circulate petitions throughout the county, whereby the taxpayers petitioned the county court to make the final order, which the court proposed to make by the above order, in case a majority of the taxpayers should petition therefor, and also to present these petitions to the county court. Even if we could suppose that services of this extraordinary nature were intended by the parties, when they made the contract of April 29, 1881, as recited in the paragraph from the answer in the former suit above quoted, to be covered thereby, yet there is here an entire failure of evidence tending to show that the plaintiff's testator did any more than *assist* in consummating the arrangement, by procuring the assent of a majority of the taxpayers, after it had been fully agreed upon. But the evidence also tends to show that *others* assisted in circulating

these petitions; that a mass meeting was held, at which Mr. Houck, president of the railroad, made ,a speech, and that several petitions were circulated at the mass meeting. It also tends to show that the inhabitants of the county were favorable to the arrangement, because they wanted to get the railroad. In short, the evidence leaves no room to doubt that, when the county court had come to the conclusion to yield its assent to the arrangement, upon condition of the railroad being built as far as Lakeville, the rest was a very easy matter. Giving the evidence in favor of the plaintiff the fullest effect, it does not, in the opinion of a majority of the court, tend to show that he procured the donation of this land by the gravel road company, with the assent of the county court, to the railway company.

But, aside from this, recurring to the terms of the contract of April 29, as above recited from the answer of the defendant in the former suit, it does not appear that the procuring of this donation of land by the gravel road company with the assent of the county court was a service contemplated by the parties to that contract. There was no evidence whatever that the services of the plaintiff's testator, in circulating the petitions and in presenting them to the county court, were rendered *under that contract*. Nevertheless, the court, by an instruction, submitted it to the jury to find whether or not such was the fact. This also was error.

If the plaintiff had given evidence tending to show the *reasonable value* of the services rendered by him, in thus circulating the petitions and in presenting them to the county court, no doubt he would have recovered a much larger amount than the defendant by its answer in the former suit admitted to be due; but, as there was no such evidence, we must conclude that the plaintiff is entitled to a judgment for no more than one hundred and three dollars and twenty-five cents. He can retain his

judgment to this extent, if he will remit the remainder within two weeks from the filing of this opinion; otherwise the judgment will be reversed and the cause remanded. Judge ROMBAUER concurs; Judge BIGGS dissents.

BIGGS, J., delivered the following dissenting opinion.

It may be that the expression of my individual opinion of the merits of this controversy will serve no good purpose, but my reading of the record is so radically different from that of the majority of the court, that I have concluded to give my impressions of the case.

The plaintiff's petition contained two counts, but it stated only one cause of action. The first count is in form as for a *quantum meruit*, and contains a detailed statement of work, alleged to have been performed by the deceased for the defendant, of the reasonable value of twenty-five hundred dollars. The sum and substance of the alleged cause of action, as therein stated, is that, in 1881, the defendant contemplated an extension of its railroad through a portion of Stoddard county, and had determined to make the extension, provided the company should receive sufficient aid or inducement from the county and its citizens; that the defendant then employed the deceased, who was well acquainted in the county, to solicit donations of money and land in aid of the contemplated extension; that under this employment the plaintiff's intestate in the months of May, June, July and August, 1881, obtained various donations of money and land from private citizens of the county, and that, through his efforts, the defendant secured the title to eleven thousand, six hundred and twenty-nine acres of land, formerly conveyed to the Cape Girardeau and Bloomfield Macadamized Road Company by Stoddard county in aid of the construction of an improved road, which the last-named company

had undertaken to build, but had failed to complete according to its contract with the county; that the macadamized road company was willing to convey this land to the defendant, provided the county would surrender its stock in the road company, and would release it from the obligation to complete the improved road; that the county court declined to do this, unless the defendant would secure the signatures of a majority of the taxpayers of the county to a petition asking the court to take such action; that to accomplish this, the deceased, under his said employment, procured over twelve hundred taxpayers of the county to sign said petition, and that said county court in August, 1881, through the aforesaid efforts of the deceased, did by its order, entered of record, agree to surrender the stock of the county in the macadamized road company, and release the latter company from its obligation to complete its road, provided the land hereinbefore mentioned was conveyed by the macadamized road company to the defendant. The plaintiff then alleged that this large tract of land was afterwards conveyed to the defendant, and that it was of the reasonable value of one dollar and fifty cents per acre, and that the amount of private subscription obtained by the deceased was of the additional value of eight hundred and seventy-five dollars.

In the second count of the petition the plaintiff sues for the same services, and the right to recover is based on an alleged special contract, but the averments are so vague and indefinite, that it is impossible to say with certainty what the contract was. It is averred that the contract was in writing, and the statement is made that the contract is attached to the petition as an exhibit, but the petition fails to set out its terms. It appears inferentially, however, that the defendant was to pay the deceased ten per cent. of the value of all subscriptions, whether of land or money, which the deceased might obtain in Stoddard county.

The defendant filed an answer denying the allegations in both counts, and, by way of an additional defense to the second count, the statute of limitations was pleaded.

It is evident from an inspection of the transcript in this case that it is imperfect. The clerk has failed to copy into the record the exhibit called for in the second count of plaintiff's petition, and he has omitted Exhibits "A" and "B," attached to papers in a former suit between the same parties and read in evidence by plaintiff.

Before I pass to the consideration of the errors assigned, I have thought it best to say something about the two counts in the petition. The defendant has assumed and urged that two separate causes of action are set forth. The pleading will not bear any such construction. The cause of action stated in each count is the same.

If there was a special contract between the deceased and the defendant, as alleged, and the contract had been fully performed, then it was competent for the plaintiff to either declare on the contract or to sue in *indebitatus assumpsit*. The plaintiff has deemed it necessary, for some reason, to state his cause of action both ways. This was unnecessary as it was competent under the first count for him to show that the work was done under a special contract and also what the terms and conditions of the contract were; and, if it appeared that the decedent had completed the work, then the rights of the parties would be adjudged according to its provisions and stipulations. *Mansur v. Botts*, 80 Mo. 651; *Stout v. Tribune Co.*, 52 Mo. 342.

As previously stated, the second count under the facts of this case was entirely superfluous, and was only calculated to bring confusion into the record. It brought about the objection by the defendant to the action of the court in refusing to compel the plaintiff to elect on which count he would rely; also the objection

that the verdict of the jury was wrong, because it did not state upon which count the verdict was found; and, also, a motion by the defendant for judgment on the second count because it did not state facts sufficient to constitute a cause of action. The first two objections were properly overruled (*Owens v. Railroad*, 58 Mo. 386; *Brinkman v. Hunter*, 73 Mo. 172), and the ruling on the last could not have been prejudicial, for the reason that but one cause of action was stated in both counts; the plaintiff was entitled to but one recovery; and all evidence introduced by the plaintiff was properly admissible under the first count, the sufficiency of which was not questioned. I will, therefore, lay out of view the second count and all objections arising out of, and pertaining to, it.

On the part of the plaintiff, the court instructed the jury as follows: "The court instructs the jury that if they shall believe, from the evidence in this cause, that the defendant entered into a contract with John Albert, employing him to solicit subscriptions and donations of land and money to aid in the extension of defendant's road from Delta to Lakeville, in Stoddard county, and to do other work in that behalf, and agreed to pay him therefor a commission of ten per cent. on all subscriptions made or obtained by him, then, if you shall further find that the said Albert under such employment rendered defendant such services, his executor, the plaintiff herein, is entitled to recover in this cause, and your verdict should be for the plaintiff in such sum as, from the evidence, you shall believe to be proper, not exceeding ten per cent. on all sums collected by defendant on account of subscription notes taken by said Albert, and ten per cent. on the reasonable value of all lands obtained by defendant in consequence of the employment and labors of said Albert."

The defendant assigns for error the giving of this instruction, and it is challenged on the ground that there was no sufficient or competent evidence, either of

the contract of employment, or of the performance of the work by the deceased, or of the value of the services claimed to have been rendered. The last objection is untenable, for the reason that the plaintiff's right to recover is made to depend upon the existence of a special contract, in which the plaintiff claimed that he was employed to do the work, and that his compensation therefor was fixed at ten per cent. of the value of all lands and money secured by him. Under this view, the reasonable value of the services became immaterial. Whenever it was disclosed by the evidence that there was a special contract for the work, that the compensation therefor had been agreed on, and the work fully performed, then the rights and liabilities of the parties depended upon, and had to be governed entirely by, the agreement. *Mansur v. Botts, supra.*

The proper disposition of the other objections presents a question of some difficulty, and the trouble is somewhat increased on account of the defects in the record hereinbefore referred to. The plaintiff, in declaring on the special contract, alleged that it was in writing, and that the contract was attached to the petition as an exhibit. The clerk failed to embody this paper in the record, and we are compelled to look to other portions of the record to ascertain its purport. The paper was identified by the secretary of the defendant corporation, and he designated it as a proposition submitted by the deceased to the defendant to do certain work in Stoddard county; but the witness said the proposition had never been accepted or acted on by the defendant's board of directors. We must conclude, then, that the special contract, if any existed, rested in parol. In proof of the existence of such a contract, the plaintiff read in evidence the answer of the defendant in another suit relating to the same subject-matter of litigation, in which the defendant admitted that on or about the twenty-ninth day of April, 1881, it entered

into a contract with the deceased, by which he was employed to solicit subscriptions of money and land for the purpose of aiding in the extension of defendant's railroad from the town of Delta to Lakeville, in Stoddard county, and to do such other matters pertaining thereto to the best of his ability, and for the interest of the road, and that the defendant agreed to pay the deceased therefor ten per cent. on all subscriptions, to be paid on the delivery of subscription notes and title bonds for lands. The defendant objected to the admission of the pleading in evidence, but, under the rulings of the supreme court and this court, it was competent evidence against it as an admission. *Dowzelot v. Rawlings*, 58 Mo. 75; *Anderson v. McPike*, 86 Mo. 293.

A. J. Henson, one of the plaintiff's witnesses, testified: "In 1881, John Albert was canvassing Stoddard county, to get the citizens of Stoddard county to sign petitions to the county court of Stoddard county to give the gravel road land to the Cape Girardeau railroad, and trying to get the people to subscribe land and money to help build the Cape Girardeau railroad. * * * There was a public meeting at Piketon called about the railroad. John Albert was there. Mr. Houck was at the meeting, and made a speech urging the people to aid in building the railroad. Houck made a rattling good speech, and said Albert was there and would attend to business, take their subscriptions to aid in building the road, and get signatures to petitions. It was admitted that Mr. Houck was the general manager of the defendant corporation." The defendant's secretary also testified that the books of the defendant showed that a portion of the expenses incurred by deceased in soliciting aid for the railroad in Stoddard county had been paid by the company. This evidence, I think, furnishes substantial proof that there was a contract between the

parties, and that the deceased was to receive as compensation a commission of ten per cent. on all money collected, and the same commission on the reasonable value of all lands secured through his efforts.

It is admitted by the defendant that the deceased did procure donations from some of the citizens of Stoddard county, and that this was done under the special contract of April 29, 1881. This is recognized by the opinion of the majority of the court; therefore, the real matter in dispute is, whether the work, done by the deceased in procuring the petitions and the subsequent order of the county court authorizing the transfer of the gravel road land to the defendant, was performed under the special contract of employment, or done under some other contract of employment. If there was substantial evidence that these services were rendered under the special contract, then the opinion of my associates is wrong.

In the first place I cannot agree that the conveyance of the gravel road land was other than a simple donation, made by Stoddard county in aid of the extension of defendant's road. The conditions attached to the conveyance, to-wit, that the extension should be made, would be exacted in any case, whether the donation was made by the county or an individual. I, therefore, conclude that the work performed by the deceased in procuring this conveyance was the kind of work contemplated by the special contract, and that this circumstance is favorable to the plaintiff's side of the case. The only outside evidence of the actual employment of the deceased to secure the donation of the gravel road lands is that of Judge Henson of the Stoddard county court. He states that, in 1881, Louis Houck and the deceased appeared before the county court, and stated that the gravel road company was willing to convey the land to the defendant, provided the county court would release the road company from the contract to complete

its road; that he informed Mr. Houck that the court would not make such an order, unless it was authorized to do so by a majority of the taxpayers of the county; that, thereupon, Houck abandoned the project and returned to Cape Girardeau county. The witness then testified that, within one or two weeks thereafter, he wrote to Houck suggesting to him the propriety of employing Albert, who was well and favorably known in Stoddard county, to obtain the consent of the taxpayers to the release of the gravel road company from its contract, provided the swamp lands were conveyed to the defendant; that, within a week, Mr. Houck answered his letter, stating that he had employed the deceased as suggested; that shortly afterwards the deceased returned to Stoddard county, and that, through his efforts, the names of a majority of the taxpayers were secured to petitions, and the court thereupon made the order releasing the gravel road company, provided it would convey the swamp lands to the defendant. Henson does not fix the exact date of these transactions, and we are compelled to look to other portions of the record for information as to this particular fact. The first bill for expenses, incurred by deceased in connection with defendant's business in Stoddard county, was audited and paid by defendant on the sixteenth day of May, 1881, and this furnishes some evidence that the letter from Houck to Henson was written prior to that time. The plaintiff proved that the special contract was entered into on the twenty-ninth day of April, 1881, and, in the absence of any evidence of another and different contract, the jury was fully authorized in finding that the employment of April 29, 1881, had reference to the same contract of employment mentioned in Houck's letter to Henson. Houck knew that the donation of the land of the gravel road company could not be accomplished, unless some one, in whom the people had confidence, was employed to agitate the question and to

work up a public sentiment in favor of the enterprise, and, therefore, it may be fairly inferred that this was the true reason or inducement for the admitted contract with deceased.

The record also fails to give the date of the Piketon meeting, at which Mr. Houck announced publicly that the deceased was present and would represent the railroad in securing aid for its extension into Stoddard county. So far as the record shows, this was the first appearance of the deceased in the county on that particular business, and this furnishes additional evidence that the employment of the deceased to procure the conveyance of the land of the gravel road company was prior to the sixteenth day of May, at which time the defendant paid the first bill of expense incurred by deceased; and it also furnished an additional reason for the conclusion arrived at by the jury, to the effect that the contract of April 29 was the only contract of employment; this was a fair inference in the absence of any testimony on the part of the defendant. If there were two contracts it was certainly within the power of defendant to show it. Wheeler, who was introduced as a witness by plaintiff, testified that he had been secretary of the road since its organization, and there was no intimation from him that there was more than one contract.

In the light of this evidence I have been unable to agree to the opinion in this case, and, therefore, dissent from the conclusion reached by my associates.

The instruction given was erroneous in one respect, but the error was favorable to the defendant. The instruction authorized the jury to find a less sum than ten per cent. of the value of the notes and lands secured by deceased. If the services sued for were rendered under the special contract, then his compensation was fixed, and the judgment should have been in accordance with the contract, regardless of the nature or value of the services.