GARRETTSON *et al. v.* NORTH ATCHISON BANK.

(*Circuit Court, W. D. Missouri, St. Joseph Division.* November 2, 1891.)

1. BANK-CHECK—ACCEPTANCE BY TELEGRAM.
   One T., having purchased certain cattle for $22,000, offered his check in payment. The seller refused to accept it or part with the cattle until assured it would be paid, and therefore telegraphed the drawee, asking if it would pay T.'s check for $22,000. The drawee answered: "T. is good. Send on your paper." *Held*, that this was an acceptance in writing, within the meaning of Rev. St. Mo. § 533, providing that no person shall be charged as an acceptor of a bill of exchange unless his acceptance shall be in writing. 39 Fed. Rep. 163, affirmed.

2. SAME—AGREEMENT TO ACCEPT—IMMATERIAL VARIANCE—"WITH EXCHANGE."
   A bank which has agreed to accept a check for a certain sum cannot refuse payment because the check when presented concludes with the words "with exchange," no place of exchange being mentioned, since this is mere surplusage, and of no effect.

3. BILLS OF EXCHANGE—BANK-CHECKS.
   A bank-check payable to "the order of" the payee is a bill of exchange, within the meaning of Rev. St. Mo. § 553, requiring an acceptance of a "bill of exchange" to be in writing.

4. CONFLICT OF LAWS—ACCEPTANCE BY TELEGRAM.
   When a person in Colorado telegraphs to a bank in Missouri asking if it will accept a certain check, to which the bank replies, by telegraph, in the affirmative, the contract of acceptance is a Missouri contract.

5. BANKS—REFUSAL TO PAY CHECK—ESTOPPEL.
   When a check is refused payment on the ground of want of funds, the bank when sued cannot for the first time raise the objection that the presentation was unreasonably delayed.

At Law.

By stipulation of parties, a jury in this case was waived, and the trial of the cause submitted to the court on the following agreed statement of facts:

"(1) Defendant is a banking incorporation, as alleged. Plaintiffs are and have been partners, as alleged.

"(2) Plaintiffs and defendant are citizens of different states, as alleged.

"(3) The Muscatine Cattle Company was a corporation, as alleged, and sold James Tate, a citizen of Missouri, cattle to the amount and of the value alleged. On September 28, 1888, said company was ready to deliver Tate one thousand head of cattle at Pueblo, Colo., which the latter had bought for $22,000. In payment, said Tate offered to give said company a check on defendant. But said cattle company refused to deliver the cattle and to receive said check without first communicating with defendant. Thereupon A. J. Streeter, agent for said cattle company, sent defendant the following telegram:

" 'PUEBLO, COLO., Sept. 28, 1888.

" '*To North Atchison Bank, Westboro, Mo.:* Will you pay James Tate's check on you, twenty-two thousand dollars. Answer. A. J. STREETER.'

"Defendant received said telegram, and sent in answer the following, which was duly delivered to said Streeter:

" 'WESTBORO, MO., Sept. 29, 1888.

" '*To A. J. Streeter, Pueblo, Colo.:* James Tate is good. Send on your paper.                              NORTH ATCHISON BANK.'

"(4) On receipt of this telegram from defendant, and on the faith thereof, the Muscatine Cattle Company delivered said cattle to Tate, and accepted a check from him on defendant as follows:

" 'WESTBORO, MO., Sept. 28, 1888.

" 'No. ——. *North Atchison Bank:* Pay to the order of Muscatine Cattle Company, twenty-two thousand dollars, with exchange.
" '$22,000.                                    JAMES TATE.'

"(5) Said Muscatine Cattle Company was at the time indebted to plaintiffs in a sum equal to or exceeding the amount of said check.

"(6) The said cattle company then offered said check to plaintiffs on account of said indebtedness, and showed the plaintiffs copies of the telegrams of September 28 and 29, 1888, to and from defendant concerning said check.

"(7) Plaintiffs thereupon accepted said check on the faith of said telegrams so shown them, and thereupon credited the amount of the check on the indebtedness of the Muscatine Cattle Company to it.

"(8) The check was afterwards duly presented to defendant for payment, which was refused for want of funds.

"(9) On October 5, 1888, plaintiffs sent defendant the following telegram:

" 'MUSCATINE, Oct. 5, 1888.

" '*North Atchison Bank, Westboro, Mo.:* Cattle were delivered, and Tate's check, twenty-two thousand dollars, taken, on your telegram that check would be paid. Now notified that check has been protested. We look to you for money, and will try to collect of you.        G. A. GARRETTSON & Co.'

"Defendant on the same day sent the following telegram in reply:

" 'WESTBORO, Oct. 5, 1888.

" '*G. A. Garrettson & Co., Muscatine, Iowa:* This bank did not send telegram that it would pay Tate's check.        NORTH ATCHISON BANK.'

"(10) On October 12, 1888, one of the plaintiffs in person called on defendant bank, and again presented the check and the telegram of September 29, 1888, and demanded payment of the check. This was again refused by defendant, and it stated that Tate had countermanded the check before its presentment."

*Karnes, Holmes & Krauthoff,* for plaintiffs.
*Lancaster, Hall & Pike,* for defendant.

PHILIPS, J., (*after stating the facts as above.*) The question as to whether or not the correspondence between Streeter, the agent of the Muscatine Cattle Company, and the defendant bank, by means of telegrams, amounted in law to the certification of the check, was considered by this court on the demurrer to the petition. See 39 Fed. Rep. 163. The facts as now agreed upon confirm the conclusion reached. That

such a contract may be as well consummated by telegram as by letter is well settled. *Brinkman* v. *Hunter*, 73 Mo. 179. The facts show that the check was drawn and offered in payment for the cattle before the first telegram was sent. This fact was clearly enough conveyed to defendant by the phraseology of the telegram of September 28: "Will you pay James Tate's check on you, twenty-two thousand dollars?" Defendant was not inquired of simply as to the solvency of Tate, nor in words, whether his check was or might be good; but the direct question was, in effect, will you pay his check on you for $22,000? The answer must be read and interpreted in connection with the question asked. It was not only that Tate is good, with the necessary implication to the extent of $22,000, but it went further, and said, "Send on your paper," clearly indicating that it was acceptable, and would be paid on its arrival. On the faith of that assurance, the vendor parted with the cattle, and accepted the check in payment; and on the faith of the telegrams the plaintiffs accepted the check in discharge of the cattle company's debt to them, and thereupon Tate was permitted to take away the cattle. A more complete estoppel could not well arise. Without affirming or denying all that is said in the opinion in *Bank of Springfield* v. *First Nat. Bank*, 30 Mo. App. 271, it is sufficient to say that the case turned upon mere parol representations as to the solvency of the drawer of the check, and did not present the case of the sufficiency of the terms employed in a written correspondence, like the present one, to constitute the certification of the check. The case of *Adoue* v. *Fox*, same volume, page 101, shows that that court observed the distinction.

Request for reconsideration of the opinion herein is made, particularly, as to the assumption therein of the applicability of the Missouri statute relative to the acceptance of bills of exchange. The contention now is that the contract was made in Colorado, and that it was only to be performed in Missouri; therefore, the contract of acceptance is to be construed according to the *lex loci contractus*. Where was the contract made as between the cattle company and the defendant? While the cattle company was for the time being, by its agent, at Pueblo, Colo., the defendant certainly was not there, either in person or by agent. The whole negotiation was conducted between them by telegraphic correspondence. I understand the rule of law to be, respecting the making of contracts by correspondence, that the contract is completed when the proposal made by one side is communicated by letter, and the other party deposits in the post-office his letter of acceptance. The moment the letter is mailed, and not until then, is the contract completed and the parties concluded and bound. *Tayloe* v. *Insurance Co.*, 9 How. 390–401. This is "the general principle of law governing contracts entered into by absent parties." *Supra*. See *Lungstrass* v. *Insurance Co.*, 48 Mo. 201–204. This contract, therefore, was completed in Missouri, and was to be performed here by the presentation at the banking house of defendant of the check for payment. The acceptor's liability being dependent upon his acceptance, it should necessarily follow that it is to be governed by the law of the place of acceptance. *Scudder* v. *Bank*, 91 U. S. 412, 413; Tied.

Com. Paper, § 507 ; 1 Daniel, Neg. Inst. §§ 867, 896 ; 1 Rand. Com. Paper, § 21 ; *Boyce* v. *Edwards*, 4 Pet. 111. "A contract by telegram is complete when a properly directed message of acceptance is delivered to the telegraph company for transmission." Gray, Tel. § 112; *Trevor* v. *Wood*, 36 N. Y. 307; *Minnesota Linseed Oil Co.* v. *Collier White-Lead Co.*, 4 Dill. 431–434; *Baker* v. *Holt*, 56 Wis. 100, 14 N. W. Rep. 8 ; *Squier* v. *Telegraph Co.*, 98 Mass. 232 ; *True* v. *Telegraph Co.*, 60 Me. 9.

The next proposition asserted by defendant is that a check like the one in question is not a bill of exchange, and is not, therefore, within the terms of the statute. We cannot accede to this contention. The said provisions of the Missouri statute, if not copied from, are similar to those of the New York statute, under which it has been uniformly held that a check is within the spirit of the statute. *Risley* v. *Bank*, 83 N. Y. 318–324; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82–88; *Bank* v. *Cardozo*, 35 N. Y. Super. Ct. 162–167; *Bank* v. *Howard*, 40 N. Y. Super. Ct. 15–20. This question has recently undergone investigation by the supreme court of the United States, sustaining the proposition that such checks in this respect perform the functions, and are of the nature, of inland bills of exchange. *Rogers* v. *Durant*, 140 U. S. 298, 11 Sup. Ct. Rep. 754.

In passing,' it is deemed sufficient to observe of the case of *Conroy* v. *Warren*, 3 Johns. Cas. 259–264, that it was predicated of a statute penal in its character, and, as such, was to be restricted in its construction; whereas, the statute under consideration, being remedial and protective in its design, should be liberally construed to effectuate its intent. *Bank* v. *Schuchardt*, 15 Hun, 405.

The final contention of defendant is that there is a material difference between the check accepted and the one presented. This variance consists in the words "with exchange" following the words "twenty-two thousand dollars." The general rule of law concededly is that a promise to do a particular act is binding upon the promisee only to the extent of the terms and upon the conditions of the contract of promise. Any other conditions adding to the burdens of his performance, or varying the place or manner thereof, may acquit the promisor in an action for breach of contract, as he may well say, "I come not to this compact." This is illustrated by the case of *Brinkman* v. *Hunter*, *supra*. The promise was to pay a draft for $608.92, whereas the draft afterwards drawn and presented was for $680.92. The acceptor could not be held on a draft for $680.92, because it was not his promise. He could not be held for the proportionate sum of $608.92, as the draft was not drawn at the time of the acceptance, and there was no conditional promise of a partial payment. The foregoing rule, however, is subject to the limitation that the variance must be as to something material, of actual substance. It is not important, it seems to me, to consider this question with a view to the inquiry as to whether a like provision in a note affects its negotiability. The case at bar involves no such issue. It is simply one of contract. In *Lindley* v. *Bank*, 76 Iowa, 629, 41 N. W. Rep. 381, it is held that where the contract and acceptance was of a bill of exchange

for $2.000, payable at defendant's bank, it was not required to pay a bill afterwards drawn for $2,000, with exchange on New York, because this added $2, the customary rate of exchange, to the sum to be paid, and was therefore tantamount to a draft drawn for $2,002. In *Hughitt* v. *Johnson*, 28 Fed. Rep. 865, the question presented was whether the addition of the words "with interest and exchange" destroyed the negotiability of the note. It was decided in the affirmative, because inferentially it was to be paid at another place than the domicile of the promisor. It will be found on examination that where the addition of exchange has been held to amount to a material variance is where it was contemplated that the draft should be paid elsewhere than at the place of the acceptance. It is observable that the check in question does not provide for exchange on any other bank, but the term is, "with exchange." This is utterly meaningless, inasmuch as no place of exchange is mentioned. Where, as in this case, the check is payable only on presentation at defendant's bank, the words "with exchange" impose no additional burden of either trouble or expense on the acceptor, and they are to be treated as mere surplusage, as no exchange can attach in such a case. *Hill* v. *Todd*, 29 Ill. 101–103; *Clauser* v. *Stone*, Id. 114; 1 Daniel, Neg. Inst. (4th Ed.) § 54.

The defendant ought not now to complain of the application to it of the rule *de minimis lex non curat;* as it disregarded the imputed variance at the time of the presentation of the check for payment. When the bill first came, it placed its refusal to pay on the ground of no funds. Then, when plaintiff presented it again in person, it placed its refusal on the ground that the drawer had countermanded the draft. The bill having been certified as good, it amounted in law to the setting aside and appropriation of the fund for the drawer; and, the drawer and transferee having acted on the faith of the certification before any notice to them of the pretended retraction, the obligation on defendant was irrevocably fixed. *Garrettson* v. *Bank*, 39 Fed. Rep. 165; 2 Daniel, Neg. Inst. (4th Ed.) § 1603. No defense can be interposed that the presentation of the check for payment was unreasonably delayed. *Garrettson* v. *Bank, supra; Bull* v. *Bank*, 123 U. S. 111, 112, 8 Sup. Ct. Rep. 62. If the defendant at the time of the presentation had placed its refusal to pay on the ground now for the first time suggested, the objection possibly might have been obviated, and the plaintiffs have been able to protect themselves. Be this as it may, in view of the fact that the check was payable at the defendant bank, and no exchange was called for to other designated place, renders the words "with exchange" meaningless and of no effect in fact and law.

The conclusion of law on the agreed statement of facts is that judgment should go for the plaintiffs for the sum of $22,000, with interest thereon at 6 per cent. per annum from the day of the presentation of the check for payment the last time, to-wit, October 10, 1888. It is ordered accordingly.