FIRST NAT. BANK OF DUNN, N. C., v. FIRST NAT. BANK OF MASSILLON, OHIO.

(District Court, N. D. Ohio, E. D.  November 24, 1913.)

No. 8663.

BILLS AND NOTES (§ 68*)—ACCEPTANCE—PROMISE TO ACCEPT.

Where plaintiff bank, on presentation to it by the W. Company of checks on defendant bank, wired defendant, "Will you pay W. Company checks?" stating the amount, and received a reply: "Forward your checks. They will undoubtedly be taken care of by the company when presented"—whereupon plaintiff advanced the amount of such checks to the W. Company, defendant was liable to plaintiff for the amount of the checks, since it might have put the matter beyond all possibility of doubt, and what it said in addition to "forward your checks" was not in direct answer to plaintiff's telegram.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 110–115; Dec. Dig. § 68.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by the First National Bank of Dunn, N. C., against the First National Bank of Massillon, Ohio. On demurrer to the . petition. Demurrer overruled.

G. M. Anderson, of Akron, Ohio, for plaintiff.

M. B. & H. H. Johnson, of Cleveland, Ohio, and George Kratsch, of Massillon, Ohio, for defendant.

DAY, District Judge. The questions in this case arise upon the demurrer filed by the defendant to the plaintiff's petition on the ground that the petition does not state facts which show a cause of action in favor of the plaintiff.

The petition alleges in substance that on December 11, 1909, the Werner Company of Akron, Ohio, presented at the plaintiff's bank a certain check for $5,921 drawn upon the plaintiff and requested the plaintiff to cash the check; and at the same time the Werner Company offered to the plaintiff two checks drawn upon the defendant and payable to the order of the plaintiff, amounting in the aggregate to the sum of $5,921, in payment of the check drawn upon the plaintiff; that thereupon, and before cashing the check first above mentioned, the plaintiff sent to the defendant the following telegram:

"Will you pay Werner Company checks fifty-nine hundred odd dollars? Answer. First National Bank"—

and received from the defendant, in reply, the following telegram:

"Answering yours. Forward your checks. They will undoubtedly be taken care of by the company when presented."

And thereupon the plaintiff cashed for the Werner Company the first above-mentioned check and forwarded for collection the checks drawn by the Werner Company upon the defendant, but the defendant refused to pay the checks so drawn, and that the plaintiff has been unable to collect from the Werner Company any part of the sum of $5,921 except the sum of $221.73.

It is further alleged that the plaintiff had no knowledge of the solvency or the insolvency of the Werner Company and was unwilling to cash the check upon it, of the Werner Company, until the plaintiff was assured that the checks of the Werner Company upon the defendant would be cashed upon presentment. It is also alleged in the petition that in the telegram the defendant telegraphed the plaintiff that by that telegram the defendant accepted, guaranteed the payment of, and would pay the checks upon presentment to it.

It is the contention of the defendant that the defendant's telegram does not constitute an acceptance or promise to pay the two checks drawn by the Werner Company on the defendant; that, under the circumstances set forth, the defendant's telegram does not constitute a guaranty of the payment of the checks; and that, if the defendant's telegram should be construed as an acceptance or promise to pay, it would be illegal and unenforceable by the plaintiff because, the plaintiff having notice that there were no funds in the defendant's bank to meet the checks, such acceptance or promise to pay would be unlawful to the knowledge of the plaintiff; and also that, if the telegram

constituted a guaranty, this guaranty would be ultra vires of the defendant and void.

From an examination of the petition it seems plain that, if the telegram of the defendant constituted an acceptance, then it is unnecessary to consider the other questions raised by the demurrer filed by the defendant.

The inquiry made of the defendant was, "Will you pay the Werner Company checks?" and asked for an answer. The Massillon bank answered, "Forward your checks. They will undoubtedly be taken care of by the company when presented." From an investigation of the state and federal cases bearing upon similar transactions, the principal case which seems to have been generally recognized by the law is the case of Garrettson v. Bank (C. C.) reported in 39 Fed. 163, 7 L. R. A. 428, s. c. (C. C.) 47 Fed. 869, and Bank v. Garrettson, 51 Fed. 168, 2 C. C. A. 145. The first hearing upon this case was upon demurrer, as reported in 39 Fed. The second hearing was upon an agreed statement of facts; and the third hearing, reported in 51 Fed., was a review of the findings of the lower court by the Second Circuit Court of Appeals. Judgment was rendered in the Circuit Court in favor of the plaintiff both on the demurrer and the agreed statement of facts. The court in 47 Fed. at page 869 said:

"The facts show that the check was drawn and offered in payment for the cattle before the first telegram was sent. This fact was clearly enough conveyed to defendant by the phraseology of the telegram of September 28th: 'Will you pay James Tate's check on you, twenty-two thousand dollars?' Defendant was not inquired of simply as to the solvency of Tate, nor, in words, whether his check was or might be good; but the direct question was in effect: Will you pay his check on you for $22,000? The answer must be read and interpreted in connection with the question asked. It was not only that Tate is good, with the necessary implication to the extent of $22,000, but it went further and said, 'Send on your paper,' clearly indicating that it was acceptable, and would be paid on its arrival. On the faith of that assurance, the vendor parted with the cattle, and accepted the check in payment; and on the faith of the telegram the plaintiffs accepted the check in discharge of the cattle company's debt to them, and thereupon Tate was permitted to take away the cattle. A more complete estoppel could not well arise."

The telegrams involved in the Garrettson Case were:

"Will you pay James Tate's check on you, twenty-two thousand dollars?"

The answer read:

"James Tate is good. Send on your paper."

In the case of Scudder v. Union National Bank, 91 U. S. 406 (23 L. Ed. 245), the court said on page 414:

"It is a sound principle of morality, which is sustained by well-considered decisions, that one who promises another, either in writing or by parol, that he will accept a particular bill of exchange, and thereby induces him to advance his money upon such bill, in reliance upon his promise, shall be held to make good his promise. The party advances his money upon an original promise, upon a valuable consideration; and the promisor is, upon principle, bound to carry out his undertaking. Whether it shall be held to be an acceptance, or whether he shall be subjected in damages for a breach of his promise to accept, or whether he shall be held to be estopped from impeaching his word, is a matter of form merely. The result in either event is to compel the promisor to pay the amount of the bill, with interest."

In the case of Williams v. Winans, 14 N. J. Law, 339, commented upon with approval in the Scudder v. Union National Bank Case, the court said:

"A parol acceptance of a draft or bill will bind the acceptor. A promise to accept, made before the acceptance of the bill, will amount to an acceptance in favor of the person to whom the promise was communicated, and who took the bill on the credit of it. An acceptance may be implied as well as expressly given. An acceptance, after the time of payment, is good and binds the acceptor."

In the case under consideration it appears from the petition that the defendant knew that the checks had been offered to the plaintiff, and that before it accepted them the plaintiff wanted to know whether these checks would be paid on presentation. The question formulated in plaintiff's telegram called for a plain, simple answer. All the defendant had to do was to make such an answer. It had it in its power, and it was the duty in fair dealing to put the question beyond all possibility of doubt. Being presumed to know this, the defendant wired, "Forward your checks." Whatever the telegram said in reference to the solvency of the company was not in direct answer to the telegram, as the telegram inquired whether or not the checks would be paid, not whether or not the Werner Company was solvent. As this question arises upon demurrer, it is not necessary to consider at this time the other contentions urged by counsel for the defendant.

The demurrer will be overruled.