# David Strauss et al. v. American Exchange National Bank of New York.

1. BANKS AND BANKING — *Presentation of Drafts — Assignment of Funds.*—Under the law of Illinois, the presentation and certification of a draft operates as an assignment to the payee of the funds of the drawer in the hands of the drawee to the amount of the draft.

2. SAME—*Payment of Draft of Insolvent Drawees.*—A banker, who without notice of the drawer's insolvency, and in the ordinary course of business, pays a duly certified draft upon him out of funds in his hands to the credit of the drawer, will be protected from other creditors of the drawer to the amount of the draft so paid.

3. SAME—*Payment of Certified Checks.*—Where the payee or holder of a check which is payable immediately, instead of demanding payment, procures the check to be certified, the check is, as between the drawer and holder, regarded as paid.

4. LAWS—*Of Foreign States—How Proven.*—In a suit involving the laws of a foreign State, the existence of such laws must be proven the same as any other question of fact.

5. PRESUMPTIONS—*As to Laws of Other States.*—In the absence of proof as to what is the law of another State, the court will presume it is the same as the law of Illinois.

Assignment Proceedings. — Error to the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed December 16, 1897.

PAM & DONNELLY, attorneys for plaintiffs in error, contended that the check in question was drawn upon a New York bank, sent to a New York bank for collection, made payable in New York through the clearing house in New York, was certified in New York, and finally paid in New York. That under these circumstances the contract was a New York contract, and to be governed by the laws of New York, is settled beyond question. Abt v. American Trust & Savings Bank, 159 Ill. 467.

Under the laws of New York the giving of a draft is not an assignment of the drawer's funds. Chapman v. White, 6 N. Y. 412.

SWIFT, CAMPBELL & JONES, attorneys for defendant in

error, conceded that the rights of the parties must be determined by the laws of New York. What the law of the State of New York was as to the right of the parties was a question of fact. The law of New York could have been proved either by the testimony of a qualified expert, or by offering in evidence the decisions of the courts of New York on the subject, or the statutes of New York, but plaintiffs in error, in order to have the findings of the lower court on that question of fact reversed, should have preserved in the record evidence as to what the law of the State of New York was.

Defendant in error contended that under the law of New York the acceptance or certification of the check in question by defendant in error imposed upon defendant in error the obligation of paying the check, and was, so far as Schaffner & Co. were concerned, and therefore so far as the assignee is concerned (for the assignee has no greater rights than Schaffner & Co.), a payment of the check in question. Meads, Receiver, etc., v. Merchants Bank of Albany, 25 N. Y. 143; First National Bank of Jersey City v. Leach, 52 N. Y. 350; Smith v. Miller, 43 N. Y. 171; The Farmers & Mechanics Bank v. Butchers and Drovers Bank, 16 N. Y. 125; Merchants Bank v. State Bank, 10 Wall. 647; Thomson v. Bank of British North America, 82 N. Y. 1; Marine National Bank v. National City Bank, 59 N. Y. 67; Security Bank v. National Bank of the Republic, 67 N. Y. 458; Marine Bank v. National City Bank, 59 N. Y. 67; Clews v. Bank of New York, 89 N. Y. 418.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

The question presented in this record is whether the County Court of Cook County erred in allowing defendant in error credit in an accounting with the assignee of Herman Schaffner & Co. for a check or draft of $55,000, dated June 1, 1893, drawn by said Schaffner & Co. on defendant in error, accepted and certified on June 3, 1893, and paid June 5, 1893.

Herman Schaffner and A. G. Becker, comprising the firm

of Schaffner & Co., were private bankers in Chicago, and defendant in error was their New York depository and correspondent. Schaffner & Co. had for many years prior to June 1, 1893, done business with the National Bank of Illinois at Chicago, which cleared for Schaffner & Co., and paid their checks that came through the Chicago clearing house.

In the regular course of business between Schaffner & Co. and the National Bank of Illinois on June 1, 1893, Schaffner & Co. made their draft of that date for $55,000, addressed to defendant in error at New York, and payable to W. A. Hammond, cashier of the National Bank of Illinois. This draft was on the same day cashed by the latter bank, that is, it gave its cashier's check to Schaffner & Co. for the draft, and having endorsed it to the Merchants National Bank of New York for collection for account of National Bank of Illinois, forwarded the same to the Merchants National Bank of New York for collection in the regular course of business.

On the same day Schaffner & Co. sent to defendant in error certain items for collection and credit to their account, aggregating $61,936.62. These items were received through the mail by defendant in error on the morning of June 3, 1893, before ten o'clock, and credited to Schaffner & Co. before that hour on its books.

After the close of business on June 2, 1893, said Hammond heard that said Schaffner had disappeared, and thinking that Schaffner & Co. might be in financial trouble, he telegraphed to the president of the Merchants National Bank not to present the draft in the ordinary way, but to have it certified at 10 A. M. of June 3d. Between 10 and 10:15 A. M. of June 3d, the draft was presented to the paying teller of defendant in error for certification, and it was certified in the following words: "Accepted June 3, 1893, payable through the New York clearing house," and was then charged to the account of Schaffner & Co. Up to this time defendant in error had no notice of the assignment of Schaffner & Co.

June 2, 1893, said Schaffner did disappear, and on June 3, 1893, the bank of Schaffner & Co. closed its doors and made a general assignment for the benefit of its creditors, and during the afternoon of that day that fact became known to the cashier of defendant in error, who was then at the bank in charge of its business. June 4th was Sunday, and on June 5, 1893, said draft was paid by defendant in error, which plaintiffs in error, creditors of Schaffner & Co., claim was contrary to their rights and the rights of the assignee of Schaffner & Co., because, as they say, the draft was payable through the clearing house of New York, by the bank of defendant in error situated there; that the contract was one to be performed in New York, and that the laws of New York fix the rights of the parties; that the certification of the draft created no obligation between defendant in error and the person presenting the draft, except to guarantee the genuineness thereof, and that there was so much money on hand to meet it, that defendant in error should not have paid the draft, but held the funds and accounted to the assignee of Schaffner & Co. for the same. It is conceded that under the law of Illinois, and the facts above stated, the presentation and certification of the draft operated as an assignment to the payee of the funds of Schaffner & Co. in the hands of defendant in error, to the amount of the draft, and if it were not conceded, that is the law of Illinois. Munn v. Burch, 25 Ill. 40; Brown v. Leckie, 43 Ill. 497; National Bank of America v. Indiana Bkg. Co., 114 Ill. 483.

What the law of a foreign State is, in a case of this kind, must be proven like any other question of fact.

It appears from the record and abstract, that plaintiffs in error, and also defendant in error, offered and read in evidence on the trial, divers decisions of the courts of New York from different reports, giving the book and page where such decisions might be found, but both abstract and record fail to show what any of such decisions are. So far as the record is concerned, it shows that certain proof was made, but what that proof was it fails to show.

In the absence of any proof as to what the law of New York is, we must presume it is the same as the law of Illinois, which, we have seen, sustains the judgment of the County Court in allowing defendant in error credit for the draft.

But if we are to hold that the law of New York is sufficiently proven, it does not sustain the contention of plaintiffs in error that the payment of the draft was wrongfully made by defendant in error. As we have seen, the National Bank of Illinois was a *bona fide holder for value* of the draft, having taken it in the regular course of business, and paid for it by its cashier's check; that it was forwarded to New York for collection, and the day following, when it was ascertained that Schaffner & Co. were probably in financial trouble, Hammond, its cashier, telegraphed to the Merchants National Bank, to which it had been sent, to have the draft presented and certified, which was done by defendant in error, and charged to the account of Schaffner & Co. in the regular course of business, and before it had any notice whatever that Schaffner & Co. were involved financially, and before it had any notice that Schaffner & Co. had made an assignment. The certification, under this state of circumstances, made defendant in error liable to pay the amount of the draft, as it did, on June 5, 1893.

After a careful examination of the cases from New York, cited by plaintiffs in error, we are unable to see their application to the case at bar, because of the particular facts of each case distinguishing them from this case. They are all cases of checks which were raised or altered after being certified.

In the latest case cited by plaintiffs in error, being a case of a draft raised after certification (Clews v. Bank of New York, 89 N. Y. 418), the court says : " By the certification the drawee bank becomes responsible to pay the holder whatever is properly due upon the check, and nothing more."

In the case of Meads v. Merchants Bank of Albany, 25 N. Y. Rep. 146, where the bank teller had certified the check in the usual course of business, the court said, speak-

ing of the certification by the teller: "His certificate that it was good was a true representation of the state of the account of Plumb with the bank, and bound the bank to hold and retain the amount for which the check was drawn to meet it, on presentation by any person by whom it might be held. It was equivalent to the acceptance of a negotiable bill of exchange, in favor of the holder, for that amount by the bank." Citing Farmers & Mechanics Bank of Kent Co. v. Butchers and Drovers Bank, 16 N. Y. 128. "The defendants received this check for value."

In the case of Thomson v. Bank of British North America, 82 N. Y. 1, the law of New York in case of a certified check is stated by the court as follows: "Ordinarily, where the payee or holder of a check which is payable immediately, instead of demanding payment procures the check to be certified, the check is as between the drawer and holder regarded as paid, and the holder must look to the bank whose obligation it has accepted, in lieu of the money, because by procuring the certification he has caused an amount of the drawer's funds or credit, equal to that for which the check was drawn, to be set apart for the payment of that check, and withdrawn from the control of the drawer, and his funds are as effectually diminished as if the money had been paid; while the bank has given a negotiable obligation to the holder of the check, which is equivalent to a certificate of deposit. If the holder of the certified check should lose it, he would still have his remedy upon it against the bank, but could not have recourse against the drawer, whose funds had thus been locked up or transferred to the credit of another party. And even the subsequent payment of the check by the bank upon a forged endorsement, would not relieve it of its liability upon the contract it had made with the true owner, nor restore to the drawer the right to draw upon the bank for the funds which had been appropriated to the payment of the check, and were consequently no longer his." See also First Natl. Bank of Jersey City v. Leach, 52 N. Y. 350.

We therefore think that in the decree of the County Court there was no error, and it will be affirmed.