R. N. TOMLINSON and Others v. NATIONAL GERMAN–AMERICAN BANK OF ST. PAUL.

June 28, 1898.

Nos. 11,098—(172).

**Bank—Negligence of Teller in Paying Check Certified by Another Bank—Question of Fact.**

A depositor in a bank drew nine checks upon it, and, before they were presented for payment, it failed. Thereupon he opened an account with the defendant bank, deposited with it sufficient money to pay all of said dishonored checks, and requested it to pay them. The nine checks were afterwards presented to it in a bundle, and were paid. Before the failure of said first-mentioned bank, one of these checks was presented to it and duly certified. There was then, and continued to be up to the time of its failure, sufficient of the depositor's funds in its hands to pay this check if it had been presented for payment, so that he was not bound to redeem it. The teller of the defendant bank did not notice the certification on the check when he paid it, and neither the depositor nor the defendant knew until afterwards that the check had been certified.

Defendant knew that the depositor had not examined the checks since he issued them. *Held*, it was a question of fact for the trial court whether or not the defendant was at fault in paying the check, although the depositor stood by when the bundle of checks was so presented, and ordered them paid.

Appeal by defendant from an order of the district court for Ramsey county, Bunn, J., denying its motion for a new trial. Affirmed.

*John B. & E. P. Sanborn*, for appellant.

Respondents are estopped by the acts, representations and direction of Page from now saying that the amount of this check was wrongfully paid by appellant to the First National Bank. Continental v. National, 50 N. Y. 575, 581; Pence v. Arbuckle, 22 Minn. 417.

*J. I. Howard*, for respondents.

Where the holder of a check presents it to the drawee when due, and procures it to be certified instead of paid, it is, as between him and the drawer, a payment, and the latter is discharged from liability thereon. First National v. Leach, 52 N. Y. 350; Metropolitan v. Jones, 137 Ill. 634.

CANTY, J.

On and prior to December 22, 1896, the plaintiffs, members of a co-partnership, kept an account at the Union Stock Yards Bank of South St. Paul, which bank on that day suspended payment. There were then outstanding nine checks drawn on this bank by plaintiffs, which checks had not before the failure been presented for payment, but eight of them were presented on the day after the failure, and were protested for nonpayment. That same afternoon plaintiffs, through their representative, one Page, made an arrangement with the defendant bank to open an account with it; and he informed its cashier of these nine outstanding checks, and requested him to have the defendant bank pay them, and charge them to plaintiffs' account. The next morning, December 23, plaintiffs deposited with defendant $4,000. Six days before the failure of the Stock Yards Bank, one of these nine checks, for the amount of $913.26, was by McDowell & Peters, the

drawees thereof, presented to that bank, and by it duly certified. If the check had then been presented for payment, it would have been paid, as plaintiffs had at all times until that bank failed, sufficient funds on deposit in it to pay all checks drawn by them upon it. Therefore plaintiffs were not bound to make this check good. But, notwithstanding that fact, defendant paid this check, and charged it to plaintiffs' account. This action was brought to recover the amount of the check. The case was tried by the court, without a jury. The court found for plaintiffs, and, from an order denying a new trial, defendant appeals.

The court finds the above facts, and also finds that on the afternoon of December 23, 1896, Page came to the window of defendant's paying teller, and told him "that some of said checks were in the hands of the First National Bank of St. Paul for collection." At this moment a messenger from the First National Bank

"Appeared at said window, and stated to said Page and to said teller that he then had the checks they were talking about. Said Page then asked permission of said messenger to examine said checks, but said messenger refused to allow him to do so, and thereupon handed to said paying teller a package of nine checks, around the middle of which package was a rubber band, and under the rubber band was a memorandum stating the amounts of said checks. Said Page thereupon said to said paying teller, 'Those are the checks.' Said paying teller then turned up the right-hand end of each of said checks, and examined the amount for which it was drawn, and the signature attached to each of said checks, but did not examine further the body or the reverse side of said checks. Among said checks, and near the middle of said bundle, was the said check above described and payable to said McDowell & Peters, which check had, as heretofore described, been certified by said Union Stock Yards Bank; and said paying teller did not examine said checks far enough to discover the certification stamp thereon, and did not discover that said check had been certified, although he could and would have done so had he examined said checks further than as above described. Said paying teller then figured up the total amount of said checks, and stated said amount to said Page, and asked said Page if he should pay the protest fees on said checks. Said Page replied, 'Yes.' Thereupon said paying teller gave to said messenger a memorandum calling for a cashier's check payable to the First National Bank for the entire amount of said checks and protest fees, and said messenger procured said cashier's check and departed. Said Page did not at the time he so directed

said teller to pay said checks, or at the time he assented to the payment of said checks in the manner above described, know, or have any reason to believe, that any one of said checks had been certified by the said Union Stock Yards Bank; but said Page supposed that all of said checks were valid and binding obligations of the plaintiffs. Said Page did not at that time, nor at any time prior thereto, examine said checks, nor did he have any opportunity to examine the same, which facts were known to the paying teller at the time said checks were so paid. On December 17, 1896, after said check had been certified by said Union Stock Yards Bank, the amount thereof was immediately charged thereto, and deducted from the account of said plaintiffs in said bank."

The certification was plainly marked and written on the check, and was easily discernible on inspection of the check. Plaintiffs did not know until after December 23, 1896, that this check had been so certified.

These are all of the facts that it is necessary to recite. It does not appear either by the evidence or findings who requested the First National Bank to present the checks for payment at the defendant bank. While the question is close and not free from difficulty, we are of the opinion that the trial court was warranted in finding that, in the paying of this check, defendant was at fault, and plaintiffs were not. The paying teller knew that Page had never examined any of the checks since they were issued, and had never had an opportunity to do so. The teller gave the checks a very hasty and superficial examination when they were handed to him by the messenger. Whether he was induced to do this by the assertions of Page at the time, and whether he was negligent in his manner of doing it notwithstanding Page's assertions, were, in our opinion, questions of fact for the trial court. It does not appear that Page knew that the teller had given the checks a superficial or negligent examination. One stood outside the teller's window, the other inside; and the evidence and findings are silent on that point. More was expected of the teller than of Page. One was supposed to be a trained expert in the banking business; the other was not. In paying out the money of a depositor on his order, the law holds a bank to rather a high degree of care and skill.

The order appealed from is affirmed.

COLLINS, J. (dissenting).

I dissent. Page, after assuring the teller that these were the checks to be paid, stood by, saw that the teller was merely looking at the amount of each check and protest fees and the signature thereto, made no attempt to examine them after they went into the teller's hands, and more than once asserted that he wanted them paid, including protest fees. While it is true that a high degree of care and skill is required of a bank when it pays out a depositor's money, I think that some care is demanded of the latter.

I am of the opinion that each of these checks, including the certified one, was paid on Page's express direction.