### SCHLESINGER v. KURZROK.

(Supreme Court, Appellate Term. June 20, 1905.)

BANKS—INSOLVENCY—DEPOSITS—SET-OFF—CERTIFIED CHECKS—NEGOTIABLE INSTRUMENTS LAW.

    Negotiable Instruments Law (Laws 1897, p. 728, c. 612) § 60, provides that an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder. Section 90, p. 731, authorizes the holder to sue in his own name, and provides that payment to him in due course discharges the instrument. Section 321, p. 756, provides that a check is a bill of exchange, and, except as otherwise provided, the provisions of the act applicable to bills of exchange payable on demand apply to a check. Section 323, p. 756, declares that when a check is certified by the bank on which it is drawn the certification is equivalent to an acceptance; and section 325, p. 756, provides that a check is not an assignment of any part of the funds to the credit

of the drawer, and that the bank is not liable to the holder of a check until it accepts or certifies the same; and the effect of acceptance to which, by section 323, certification is made equivalent, is declared by section 112, p. 734, to be that the acceptor engages that he will pay it according to the tenor of the acceptance. *Held*, that where the drawer of a check himself procured it to be certified before delivery to the payees, and before presentation for payment the bank failed, the bank was not liable thereon to the drawer, but only to the holder in due course at the time of the failure, and hence the drawer on receiving the check from the payees after failure of the bank was not entitled to set off the amount thereof against an indebtedness to the bank.

Greenbaum, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Leo Schlesinger, as receiver of the Federal Bank of New York, against Raphael Kurzrok. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before SCOTT, P. J., and LEVENTRITT and GREENBAUM, JJ.

Fluegelman & Bach (Henry Fluegelman, of counsel), for appellant.

Kneeland, La Fetra & Glaze (George W. Glaze, of counsel), for respondent.

SCOTT, P. J.   Plaintiff, as receiver of an insolvent bank, sues to recover the amount of a promissory note made by defendant, and held by the bank on the date of its failure. Defendant's liability on the note is conceded, the only question involved in the appeal being as to the right to set off, as against the claim upon the note, the claim of defendant against the bank arising upon the following facts, which are agreed to: On April 12, 1904, the defendant was a depositor with the Federal Bank of New York (of which plaintiff is receiver), and had to his credit on said date at least the sum of $600; that defendant executed and presented to the said Federal Bank, for certification, a check bearing said date, to the order of Schmeidler and Bachrach, for the sum of $600, which said check was thereupon duly certified by the said bank, and said check was thereupon delivered to the payee; that thereafter, and on the 14th day of April, 1904, the said Federal Bank had become and was insolvent, and the superintendent of the banking department of the state of New York thereupon took charge of its assets; that the payment of its obligations and its business generally were thereupon stopped and suspended, and continued so during all the time hereinafter mentioned; that the said payees duly indorsed said check, and presented the same for payment, which payment was refused for the foregoing reasons; that after said suspension, and on the same day, the payees duly returned said certified check to the defendant, who delivered to them his check therefor, and the defendant became and still is the owner and holder of said check. No question is made as to the right of defendant to set off against his indebtedness upon the note any sum due to him by the Federal

Bank at the moment of his failure, but it is apparently well settled that he cannot set off the claim asserted in the answer if it was acquired by him after the act of insolvency. Scott v. Armstrong, 146 U. S. 499, 511, 13 Sup. Ct. 148, 36 L. Ed. 1059. The question involved, therefore, in the present case, is whether or not the defendant was, when the bank failed on April 14th, a creditor to the amount of the check which he had previously caused to be certified, and, after certification, had delivered to the payees named therein. It becomes necessary, therefore, to determine the relation which existed at the moment of the bank's failure between it and Schmeidler and Bachrach, who were the holders and owners of the check. Unquestionably the bank then owed to some one the amount represented by the check. If it owed it to the then holders of the check, it did not at the same time owe it to the defendant, for it could not owe the same money to two different claimants. Section 321 of the negotiable instruments law.(Laws 1897, p. 756, c. 612) provides that "a check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." Section 323 provides that, "where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance"; and section 325 provides that "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer to the bank, and the bank is not liable to the holder unless or until it accepts or certifies the check." The effect of acceptance, to which, by section 323, certification is made equivalent, is declared by section 112 to be that the acceptor engages that he will pay it according to the tenor of his acceptance. Section 60 provides that "an instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof"; and section 90 provides that "the holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument." There can be no doubt, under the facts as agreed upon, that defendant had transferred the check to Schmeidler and Bachrach in such manner as to constitute them the holders thereof, and it consequently follows that up to the time of the failure they, and they alone, could have sued the bank upon the check. As was recently said by the Appellate Division in this department, the check and certification operated as an assignment of the funds to the credit of the drawer with the bank, and the bank became liable to the holder (Meuer v. Phenix Nat. Bank, 94 App. Div. 331, 335, 88 N. Y. Supp. 83); and such is the clear implication to be drawn from section 325, Neg. Inst. Law (Laws 1897, p. 756, c. 612).

In Willets v. Phœnix Bank, 2 Duer, 121, it was said:

"It is the duty of the officer certifying the check to cause it to be immediately charged as paid in the account of the drawer; and when this is done the sum thus charged will remain as a deposit in the bank to the credit of the check, and be forever withdrawn from the control of the maker, except as a holder of the check."

And in First Nat. Bank v. Leach, 52 N. Y. 350, 11 Am. Rep. 708, it is said:

"The theory of the law is that when a check is certified to be good by a bank the amount thereof is then charged to the account of the drawer in the bank certification account. * * * It follows that after a check is certified the drawer of the check cannot draw· out the funds then in the bank necessary to meet the certified check. That money is no longer his."

The result of these statutory provisions and judicial decisions is that the presentation of the check for certification and its certification by the bank operated to set aside or assign from the general credit of the defendant to the credit of the check the amount represented thereby; that by the certification the bank undertook to pay the check according to the terms of its acceptance—that is, to whoever, being the holder and indorsee thereof, might present it for payment; that this obligation of the bank attached to the check and followed it into the hands of each successive holder in due course; that by its delivery to Schmeidler and Bachrach, to whose order it was drawn, the bank became indebted to. them for the amount represented by the check, and were no longer indebted to defendant. It follows that at the time of the failure the payees named in the check, being then the holders, were the creditors of the bank for the amount of the check, and that the defendant was not. We understand it to be conceded that this would have been the situation of the parties if the check had been delivered to the payees uncertified, and they had caused it to be certified; but it is urged that the fact that the defendant himself caused the check to be certified before he gave it to the payees calls for the application of a different rule. It is undoubtedly true that a different rule is to be applied as between the drawer and the payee of a check, when the drawer himself, before delivery, causes the check to. be certified, from that which obtains when the payee, after delivery to him, obtains the certification. In the latter case the drawer is discharged from the indebtedness for which the check was given (section 324, Neg. Inst. Law, Laws 1897, p. 756, c. 612), and the holder can look only to the bank; while in the former case the drawer is not discharged of his indebtedness, but the holder may, in case the bank fails to abide by its obligation, have recourse to his debtor upon the original indebtedness. This rule, however, applies only to the relation between the drawer and the payee, and has nothing to do with the character or extent of the obligation assumed by the bank by the act of certification. It may be that after the failure of the bank, Schmeidler and Bachrach, the payees named in the check, had the right to recover the amount of their debt from the defendant, and that upon paying it the defendant was entitled to receive back his check. So· much must be conceded, as it may also be that defendant thereby acquired a right of action against the bank either for the amount of the check, as the holder thereof, or for damages for the failure to honor the acceptance. Such right or claim, however, was one acquired after the failure, and not one existing at the time of the failure, for until the refusal to pay the check occurred no

right of action against the bank, by reason of the check, could devolve upon defendant. Our conclusion is that up to the moment of the bank's failure the only creditors of the bank upon the check were the payees named therein, who then held it, and that whatever right the defendant acquired by the redelivery of the check to him was a claim which arose after the failure, and which consequently cannot be set off against the sum he then owed the bank.

The judgment was therefore right, and must be affirmed, with costs.

LEVENTRITT, J., concurs.

GREENBAUM, J. (dissenting). This action was brought by the plaintiff, as the receiver of the Federal Bank, to recover the amount of a promissory note discounted by said bank for the defendant. Liability upon the note is conceded, and the appeal arises out of the counterclaim interposed by the defendant. The admitted facts with respect to the counterclaim are that the defendant was, on the 12th day of April, 1904, a depositor of the Federal Bank in an amount exceeding $600; that on said day he drew a check to the order of a third person for the sum of $600, and had it duly certified by the bank in his own behalf; that after certification he delivered the check to the payee therein named; that between the time that the check was certified and its presentation for payment on April 14, 1904, the bank suspended payment because of its insolvency; that on the same day the check was returned unpaid to the payee, who thereupon surrendered it to the defendant upon the receipt of cash for the amount thereof. No claim is made that the payee had not exercised due diligence in depositing said check. The respondent, however, insists that the certification of the check operated as a withdrawal from defendant's account as depositor of the amount of the check, and that defendant's subsequent acquisition of the check gave him no better rights thereunder than any assignee, a stranger to the bank, might have. There is no doubt that, if the amount of the certified check is to be considered as a part of the deposit of defendant with the bank, the counterclaim would properly lie. It is equally well settled that a claim against an insolvent corporation, acquired after insolvency, cannot be set up as an offset by the assignee of the claim against his own indebtedness. Did the certification of the check operate as a withdrawal, to the extent of the amount thereof, from the defendant's account with the bank as depositor, and as a discharge of defendant's obligation thereunder to the payee? The delivery of "an ordinary certified check upon a general account is neither a legal nor equitable assignment of any part of the sum standing to the credit of the depositor, and confers no right upon the payee that he can enforce against the bank." Such a check "is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually cashed." O'Connor v. The Mechanics' Bank, 124 N. Y. 324, 331, 26 N. E. 816, citing Florence Mining Co. v. Brown, 124 U. S. 385, 391, 8 Sup. Ct. 531, 31 L. Ed. 424;

section 325 of the negotiable instruments law (Laws 1897, p. 756, c. 612).

Did the certification of the check procured by the maker operate to change the foregoing rule? Section 325 of the negotiable instruments law reads as follows:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Section 324 of the same act declares:

"Where the holder of a check procures it to be accepted or certified the drawer and all endorsers are discharged from liability therein."

Reading the two sections together, it seems reasonably clear that only in the case where the certification is procured by the holder of the check does the check operate as an assignment of a part of the funds to the credit of the drawer and a discharge of the drawer and indorsers from liability thereon. But where the maker procures the certification of the check before delivery the rule is different. While no case has been found in this state directly pointing out the distinction to be observed between the case of a certification of a check upon the request of its payee or subsequent holder and of the maker, there are abundant authorities in other states declaring that the delivery by the maker of a certified check does not constitute payment any more than an uncertified check. Minot v. Russ, 156 Mass. 458, 31 N. E. 489, 16 L. R. A. 510, 32 Am. St. Rep. 472, happily illustrates the two cases of a check certified for the payee and for the maker respectively, and cites numerous cases in support of the proposition just stated. The following excerpt from the case on page 460 of 156 Mass., page 490 of 31 N. E. (16 L. R. A. 510, 32 Am. St. Rep. 472) is pertinent:

"So far as the question has been considered, it has been decided that the certification of a bank check is not, in all respects, like the making of a certificate of deposit, or the acceptance of a bill of exchange, but that it is a thing sui generis, and that the effect of it depends upon the person who, in his own behalf, or for his own benefit, induces the bank to certify the check. The weight of authority is that if the drawer in his own behalf, or for his own benefit, gets his check certified, and then delivers it to the payee, the drawer is not discharged; but that if the payee or holder, in his own behalf, or for his own benefit, gets it certified, instead of getting it paid, then the drawer is discharged"—citing numerous authorities.

The distinction pointed out is entirely consistent with the decision of our state and our negotiable instruments law.

It seems to be conceded that under the circumstances here appearing the defendant was not discharged from his obligation towards the payee or holder of the check in due course, and that he "acquired a right of action against the bank for damages for failure to honor the acceptance"; but it is argued that no right of action was created until after the failure, because the refusal of the bank to honor the check took place after the failure. I fail to see how that circumstance defeats the offset or counterclaim. It may as well be said that a depositor having funds with the defunct bank may not offset the amount thereof withheld against the claim of the

bank because the right of action existing under the counterclaim due to the refusal of the bank to repay the ·depositor the amount standing to his credit arose after the failure. In the case of a depositor the bank agrees with him to honor his drafts or checks to the extent of his deposits, and to repay any balance to his credit upon demand. In the case of a bank certifying a check of its depositor it has, in effect, entered into an agreement with him that the amount thereof is to be charged to the account of the drawer in the bank certification account, to be made applicable to the payment of that check. First National Bank v. Leach, 52 N. Y. 350, 11 Am. Rep. 708. The failure .of the bank to carry out its agreement makes the depositor liable to the holder of the check, and creates a right of action in favor of the depositor against the bank arising out of an agreement made before its insolvency, just as in the case of the ordinary depositor the right of action arises by the failure of the bank to observe its agreement made before insolvency. Indeed, it may also be said that the failure of the bank to honor the check certified for its depositor resulted in leaving the account of the depositor as it was before the certification, and therefore subject to the ordinary rights of offset in favor of the depositor.

It follows, therefore, that the delivery to a third party of the check for $600, which the defendant himself procured to be certified, did not operate as a discharge of defendant's liability thereon, and that the counterclaim was good in law, and should have been allowed. As, upon the conceded facts, the offset interposed exceeds the amount of plaintiff's claim, the judgment should be reversed, and judgment rendered in favor of defendant, with costs below and in this court to the appellant.