MIDWEST NATIONAL BANK & TRUST COMPANY, Appellee, v. NILES & WATTERS SAVINGS BANK et al., Appellants.

**BILLS AND NOTES:** Written Acceptance of Check—Effect. An indorsee of a check "for deposit" who, upon receipt of the check, withholds payment until the drawee bank has given its written promise to pay the check, thereby releases the drawer and indorser, and, in an action *on the written acceptance,* is not subject to defenses which might be urged against the check itself; and such defenses are properly stricken from the answer.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

JANUARY 14, 1921.

ACTION at law by plaintiff, a Kansas City bank, against defendant bank, upon a check executed by W. J. Croke, August 1, 1919, in the sum of $1,350. The check was payable to the order of The Texas Coast Irrigated Land Co. The check was indorsed by the land company and delivered to plaintiff. The check was accepted by the defendant bank by telegram, but afterwards, payment was refused, and the check protested. Plaintiff bases its right to recover upon the acceptance. Croke, intervener, adopted the same defenses as those set up by the defendant bank. Defendant bank answered in general denial; admitted that plaintiff received the check signed by Croke, that it was indorsed as alleged, that the telegrams set out in plaintiff's petition were received and sent, and that the check was protested, as alleged; and set up special defenses. Plaintiff's

motion to strike such special defenses from the answer, and to strike the petition of intervention, was sustained. From such rulings, the defendant and intervener appeal.—*Affirmed.*

*Remley & Remley,* for appellants.

*B. E. Rhinehart,* for appellee.

PRESTON, J.—Plaintiff alleges as its cause of action that, on August 1, 1919, one W. J. Croke drew and delivered his check to the Texas Coast Irrigated Land Company, on the defendant bank, as follows:

"Kansas City, August 1, 1919.
"Niles & Watters Savings Bank,
"Anamosa, Iowa.
"Pay to Texas Coast Irrigated Land Co., Or Order $1,350.00.
Thirteen Hundred Fifty, and      no/100 Dollars
"For value received, I represent the above amount is on deposit in said bank or Trust Co., in my name, is free from claims, and is subject to this check.
"W. J. Croke."
Indorsed: "For deposit, Texas Coast Irrigated Land Co., by H. J. S."

On the face of the check appears the statement as to protest, August 4, 1919. It is alleged that, thereafter, the land company indorsed the check in the manner stated, and presented same to plaintiff bank for payment, and plaintiff, before paying said check or extending credit thereon to the land company, telegraphed an inquiry to defendant, asking if said defendant would pay the check, which telegram is as follows:

"Kansas City, Mo. Aug. 1, 1919.
"Niles & Watters Savings Bank, Anamosa, Iowa.
"Will you pay check M. H. Neville, $1,950.00. Also W. J. Croke, $1,350.00.
"Midwest National Bank & Trust Co."

It is further alleged that the message was promptly delivered to the defendant, and that, on August 2d, defendant answered by telegraph, as follows:

"Anamosa, Iowa, Aug. 2, 1919. ·
"Midwest Nat. Bank & Trust Co.,
    "Kansas City, Mo.
    "Will honor W. J. Croke check $1,350.00. Cannot honor Neville check today. May after he returns home.
                    "Niles & Watters Savings Bank."

(The Neville matter is not in controversy herein.) The petition alleges that the foregoing telegram was received by plaintiff, and, acting upon and relying upon the same, plaintiff paid the said check to the land company, in the amount of the check; that the payment and credit so made and given were upon the statement of the defendant that they would pay said check; that thereupon the plaintiff promptly forwarded said check for payment; that said check was received by defendant for payment on August 4, 1919, and it then and there refused payment, and the same was protested on the grounds of insufficient funds; that thereafter, plaintiff made further demand on defendant for payment, by wire, as follows:

"Kansas City, Mo. Aug. 6, 1919.
    "Niles & Watters Savings Bank, Anamosa, Iowa.
    "We insist upon payment W. J. Croke check $1,350.00, per your wire second.
                    "Midwest National Bank & Trust Co."

It is further alleged that plaintiff is the owner and holder of said check, and that it is due and unpaid; that, by reason of said telegram, defendant agreed to the payment of said check on presentation, and thereby became liable to plaintiff for the amount thereof, with interest from the time of presentment, together with protest fees and costs.

. The special defenses interposed, stated as briefly as may be,

are that plaintiff was acting as the collecting agent for the land company, and paid no consideration for the check, and is not a holder for value in due course; that the land company obtained the check from Croke through fraud and misrepresentation, and without consideration; and that plaintiff has no better rights than the land company; that Croke ordered and directed defendant not to pay the check when presented; and that the same was protested, and not paid. In Division 2 of the answer, it is alleged that the check was indorsed for deposit; that the check was obtained from Croke by the land company without consideration, by fraud and misrepresentation; that the check was given to the land company for a part of the purchase price for land in Texas, pursuant to a written contract between the land company and Croke. The representations and agreements are then set out, and the falsity and reliance thereon alleged. It is further alleged that plaintiff had full knowledge that the land company was in the business of misrepresenting, and of defrauding men obtained from the north, in selling them land, and knew, or had reason to know, that the check was obtained by fraud and without consideration; that plaintiff was acting for the land company in collecting said check, and for no other purpose. In Division 3, it is alleged that plaintiff knew that the land company was engaged in selling land to foreign purchasers, and that the land company would take purchasers from Kansas City to Texas in a special car, at practically no cost; and that plaintiff knew that the land company was in the business of misrepresenting and defrauding land seekers, and obtaining their notes and checks, and was conniving and assisting said land company in placing said checks and notes in the hands of innocent purchasers, and collecting the same. Plaintiff moved to strike this from the answer, and each division, as frivolous, irrelevant, incompetent, and redundant matter, and because the matters alleged are no defenses, to wit, all the matters in Division 1, which we have before set out. The motion is to strike out all of Division 2, also the whole of Division 3, and separately to strike all of the first paragraph of Division 3. The motion is so framed as to strike out each division, and separately, the different paragraphs therein. The motion to strike the petition of intervention is on the ground that the petition, on its face,

does not show that intervener has any interest in the matter in litigation between plaintiff and defendant; that plaintiff's action is based upon the contract made with the defendant, whereby defendant agreed to pay plaintiff the amount of a certain check, set out in the petition, and which defendant certified in writing, and, upon such certification, the amount of the check became a deposit in defendant's bank, subject to call of plaintiff, over which fund the intervener has no right to stop payment, or otherwise.

1. Appellants contend that, because the check was indorsed by the land company "for deposit," the delivery thereof was conditional, or for the special purpose of collection, and did not pass the property in the instrument, and that it was a restrictive indorsement, and that, therefore, all subsequent indorsees acquire only the title of first indorsee, under such restrictive indorsements. They contend further that the plaintiff is not a holder in due course, and that the instrument is subject to the same defenses as if it were nonnegotiable. They cite Section 3060-a16, Code Supplement, 1913, the substance of which is that a negotiable instrument is revocable until delivery, and that, as between the parties, or a remote party other than a holder in due course, the delivery must be made by authority, and that, in such a case, the delivery may be shown to have been conditional, or for a special purpose, and not to transfer the property in the instrument, etc. Also, Section 3060-a33, which provides that an indorsement may be restrictive, etc. Also, Section 3060-a36, as to what indorsements are restrictive; that it is so when it either prohibits the further negotiation, constitutes the indorsee the agent of the indorser, or vests the title in the indorsee in trust to the use of some other person. But the mere absence of words implying power to negotiate, does not make an indorsement restrictive. Also, Section 3060-a37, as to the effect of restrictive indorsement, and as to the rights of the indorsee. This section provides that such indorsee may receive payment, bring any action that the indorser could bring, and transfer his rights as such indorsee, where the form of the indorsement authorizes him to do so; but that all subsequent indorsees acquire only the title of the first indorsee under the restrictive indorsement. Also, Section 3060-a52, which provides,

in part, that a holder in due course is one who has taken the instrument in good faith and for value, if, at the time it was negotiated to him, he had no notice of any infirmity or defect in the title of the person negotiating it. Also, Section 3060-a58, which provides, in substance, that a negotiable instrument is subject to the same defenses in the hands of any holder other than one in due course, etc. It is contended by appellant, and cases are cited on these propositions, some of which will be referred to later, that the indorsement on the check ''for deposit'' is a restrictive indorsement; that the checks deposited in a bank, to be credited to the depositor, vest the property in the bank only when it has become absolutely responsible for the amount to the depositor; that the check in question was not the property of the plaintiff, but that it simply held the check for collection, title being in the land company; and that, therefore, appellant and Croke may set up any defense as against plaintiff that Croke could have against the land company; that an indorsement for the benefit of the indorser constitutes the trustee the agent of the indorser; that the delivery of the check gives effect to the indorsement, and it passes to the indorsee subject to all restrictions imposed upon it; that the rights of plaintiff are subject to the terms of the indorsement; that the restrictive indorsement ''for deposit'' rendered the check nonnegotiable, and subject to original defenses. Appellants also refer to Section 3060-a134, which provides that:

''Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor, except in favor of a person to whom it is shown, and who, on the faith thereof, receives the bill for value.''

This has reference to bills of exchange, and appellees contend that there is a difference between a check and a bill of exchange, and that the section last referred to is not applicable to the present situation, because, as they say, a check is unlike a bill of exchange in this: that acceptance of a check is optional; while, in the case of a bill of exchange, presentation for acceptance is necessary, and that, under Section 3060-a186, a check must be presented within a reasonable time, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay, but that, in a bill of exchange, if not presented

within a reasonable time, the drawer is absolutely discharged. A check is defined by Section 3060-a185, Code Supplement, 1913.

Appellant further contends that plaintiff, as defendant assumes, paid no consideration for the check, and that, without consideration, plaintiff was not harmed; that, if this is so, the indorser was not released, and that, therefore, defenses against the land company are equally available against plaintiff. If, however, as plaintiff alleges, it paid the land company the full amount of the check, then plaintiff would be harmed. It would have to look to the land company, and the land company might be insolvent. It may be, as appellee contends, that this would be so, if the land company had been given credit for the full amount, and that the relation of debtor and creditor would exist. It is also contended by appellant that it is a question of fact for the jury whether this check was owned by plaintiff. But we shall see in a moment that this is provable by the defendant, under the general denial. We take it that the indorsement by the land company ''for deposit'' was so made by the land company to the plaintiff bank, and not by the plaintiff bank to the defendant bank herein. It is important to remember that, when the check was presented to plaintiff bank by the land company, the plaintiff sent and received the telegrams before set out, and this was after it had been indorsed ''for deposit'' by the land company; and, after the exchange of telegrams, plaintiff paid to the land company the amount of the check. Appellee contends that, after all, it is not material whether plaintiff then paid the money to the land company, or deposited it to the credit of the land company. It is alleged in the petition that plaintiff so paid the land company the full amount of the check, and that it is the owner and holder of the check. Since it is so alleged, defendant's general denial puts these last-named matters in issue, and, if they are untrue, the fact is provable under the general denial, in so far as they may be material.

These are at least some of the matters which appellant claims the right to prove, under some of the matters struck out. Here again it must be borne in mind that it is not claimed that any fraud was practiced upon the defendant in securing from it the acceptance or telegram by which it agreed with plaintiff to pay the check. Plaintiff simply wired defendant, asking if

it would pay check of Croke for $1,350, and defendant said it would. Defendant had its own books before it, and could readily look at the Croke account, and see whether Croke's representation in the check that he had that amount in defendant's bank, subject to the check, was true. It is not claimed by defendant or intervener, as we understand it, that defendant has not even now money of Croke's sufficient to pay this check, except that the check was protested for want of funds. It is alleged by appellants in their answer that the reason that the check was not paid, was that payment was stopped by Croke. However this may be, it is not alleged that defendant does not have funds belonging to Croke. At any rate, it is not claimed that, at the time defendant agreed, by its telegram to plaintiff, to pay the check, defendant did not have money belonging to Croke, to meet the check. If defendant did have money belonging to Croke, to meet the check, when it sent the telegram, it could protect itself by retaining it. Plaintiff had a right to rely upon the telegram. Croke represented in writing that he had the money there, subject to the check, and defendant wired plaintiff that it would pay. It should be remembered, too, that plaintiff is not suing as an indorsee of the land company, but that plaintiff is suing on the acceptance, or the agreement of defendant to pay, plaintiff claiming that all indorsers are released, and that, by the telegrams, there was a new contract between plaintiff and defendant alone, and that neither the land company nor Croke is concerned therein. Much of appellant's argument, or at least some of it, might be applicable, were it not for the new contract created by the telegrams. There is nothing in the telegrams about the plaintiff's taking the check for deposit or for collection. We have already sufficiently indicated, perhaps, that appellants lose sight of the fact that plaintiff relies upon the acceptance and the new contract by the telegrams. Appellants say that plaintiff bases its argument upon the assumption that it was an admitted fact that it relied upon the telegrams from appellant, and purchased the check, or gave credit to the land company, and that plaintiff claims that the check was certified. Appellants say that these two matters, together with the fact that the check was indorsed "for deposit," are the points upon which appellants mainly rely for a reversal.

As to the first proposition, while it is not true, of course, that it is an admitted fact that plaintiff relied upon the telegram, and purchased the check, it is so alleged in the petition, and denied by the defendant. As said, under the general denial, defendant can disprove the allegations of the petition; and, if it is able to do so by the evidence, then plaintiff would not be entitled to recover, regardless of the defenses attempted to be set up as between the land company and Croke. In short, plaintiff must prove the allegations of its petition; and, if it fails to do so, there can be no recovery. Whether what was done amounts to a certification or acceptance will be dealt with later.

2. Appellant cites three or four cases as holding that, where a check is indorsed for deposit, it does not pass title. One of the cases is *Beal v. City of Somerville,* 50 Fed. 647 (17 L. R. A. 291), and it does so hold. The Supreme Court of Kansas, in referring to that case in *Scott v. McIntyre Co.,* 93 Kan. 508 (L. R. A. 1915 D 139), states that it is classed with the minority decisions in the notes to 7 L. R. A. (N. S.) 694. But the *Beal* case may be distinguished from the instant case, since the court there was not dealing with a certified or accepted check. The court seems not to have bottomed its holding on the form of the indorsement, for it says:

"The fact that the checks were expressly indorsed 'for deposit' does not change the nature of what occurred in this instance, as there are no intervening equities, although it emphasizes it."

It seems to us that, in the instant case, there are intervening equities. The certification or acceptance by defendant bank by means of the telegrams was after the indorsement; and, after the receipt by the plaintiff of the telegram from defendant, plaintiff paid the full amount of the check to the land company, thus indicating that plaintiff took the check as owner. If the indorsement by the land company "for deposit" was all there was to it, there might be force in appellant's contention, and such indorsement "for deposit" might be on the assumption that the check was good, and would be paid, and if it turned out otherwise, the plaintiff would not be bound to the depositor, the land company. But that is not this case, because of the circumstances occurring after the indorsement, as before stated. Or,

if plaintiff had sent the check to the defendant, and indorsed it "for deposit," a different question might arise. But that is not the fact, under the issues raised. Plaintiff demanded payment of defendant, and protested the check for nonpayment.

Appellee cites the following cases, to the proposition that an indorsement of a check "for deposit" passes title of the check to the bank, and that, therefore, it is not a restrictive indorsement. *Ditch & Bros. v. Western Nat. Bank,* 79 Md. 192 (23 L. R. A. 164) ; *National Com. Bank v. Miller,* 77 Ala. 168 (54 Am. Rep. 50) ; *Security Bank v. Northwestern Fuel Co.,* 58 Minn. 141 (59 N. W. 987) ; *Fourth Nat. Bank v. Mayer,* 89 Ga. 108 ; *Lloyd v. Campbell,* 21 Pa. Co. Ct. 207 ; *Brook, Oliphant & Co. v. Vannest,* 58 N. J. L. 162 ; *Wasson v. Lamb,* 120 Ind. 514 ; *Haskell v. Avery,* 181 Mass. 106 ; *Tyson v. Western Nat. Bank,* 77 Md. 412 (23 L. R. A. 161) ; *Scott v. McIntyre Co.,* supra. In the case of *Security Bank v. Northwestern Fuel Co.,* supra, the court said:

"The only question is whether the title to the check had passed to the plaintiff. We think it had. The indorsement of the Mill Wood Company was sufficient, and was not restrictive or qualified. Where a customer has a deposit account with a bank, on which he is accustomed to deposit checks payable to himself, which are credited to him on his account, and against which he is authorized to draw, an indorsement 'for deposit' is, in the absence of a different understanding, a request and direction to deposit the sum to the credit of the customer, and passes the absolute title to the check to the bank. *Commercial Bank v. Miller,* 77 Ala. 168 ; *First Nat. Bank v. Smith,* 132 Mass. 277. Upon a deposit, being made by a customer in a bank, in the ordinary course of business, of money, checks, drafts, or other negotiable paper received and credited as money, the title of the money, drafts, or other paper immediately becomes the property of the bank, which becomes debtor to the depositor for the amount, unless a different understanding affirmatively appears. *In re State Bank,* 56 Minn. 119 (57 N. W. 336). There is nothing in this case indicating any different understanding."

We shall not review the cited cases further, for the reason that it occurs to us that the more important factor in the case is the effect of the telegrams. In this connection, however, we

should say that appellee contends that, under Section 3060-a188, Code Supplement, 1913, which provides that, where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon, and where, as here, the plaintiff did procure the acceptance or certification of this check, and by so doing, released the drawer and indorser, and plaintiff had the right to sue on the acceptance, this shows that it was the intent of the parties that the title should pass to the plaintiff. · The appellants concede that "property in checks deposited in a bank to be credited to the depositor vests in the bank when it has become absolutely responsible for the amount to the depositor; in other words, if the depositor would have a right of action; and could bring suit against the bank for the amount of the checks" (citing authority). It is conceivable that a situation might arise where an indorsement for deposit would not pass the title, such, for instance, as insolvency of the bank and fraudulent concealment of that fact from the depositor, and so on; but there is no such question in this case. As said, we think the questions turn more largely upon the effect of the passing of the telegrams.

3. Section 3060-a187, Code Supplement, 1913, provides that, where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance; and, as before pointed out, the next section provides that, where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon. Section 3060-a189 provides that:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Section 3060-a191 defines acceptance to mean an acceptance completed by delivery or notification. We think one is as effective as the other, and that, when completed by either of these methods, it may not be retracted, and that a new relationship is created between the certifying bank and the holder requesting acceptance. The promisor becomes the principal debtor. *Iowa St. Sav. Bank v. City Nat. Bank,* 183 Iowa 1347.

Plaintiff's claim is against defendant on the new agreement

created by defendant's telegram. Plaintiff's action is not really a suit on the check, in the sense of bringing a suit on a written instrument, but upon the contract by which defendant agreed to pay plaintiff the amount represented by the check; and thereafter the check itself is only an incident of the agreement,—it identifies and connects the two telegrams passing between the parties. In *Leach v. Hill*, 106 Iowa 171, 176, we said:

"In this, as in most of their contentions, appellants assume that the causes of action are based upon the checks alone; and the authorities cited are only applicable to such a case. As we view the petition, neither count asks to recover upon the check alone, but upon the alleged agreements, to which the check is but an incident."

Whether defendant's telegram to plaintiff constitutes a technical acceptance or certification, we think plaintiff is entitled to recover on defendant's promise to honor and pay the check, even though it was not strictly and technically an acceptance or certification. In *Iowa St. Sav. Bank v. City Nat. Bank*, 183 Iowa 1347, 1353, a case somewhat similar in its facts, we said:

"We think it is not very material whether the conceded facts constitute, in every technical sense, an acceptance of the check or promise to accept, or whether we treat the act and promise of the appellant as amounting to a certification of the check. The question put to appellant by appellee was 'Will you pay?' etc. The answer was, in unequivocal terms, 'We will pay,' etc. When this promise was acted upon, the liability of the promisor was not that of a surety or guarantor. The appellant became at once the principal debtor of the plaintiff; and, while it had the right to insist that the check drawn upon it should be such as it promised to pay, the courts should not indulge in over-refinement of reasoning to discover plausible ground upon which to relieve it from the performance of its fairly assumed obligations."

In *Wells v. Western Union Tel. Co.*, 144 Iowa 605, 620, we said:

"This message amounted in law to an acceptance of that draft, from which the Bank of Denison, if the message were authentic, could not recede. *Johnson v. Clark*, 39 N. Y. 216;

*Garretson v. Bank* (C.C.) 47 Fed. 867; *Coolidge v. Payson*, 2 Wheat. 66 (4 L. Ed. 185) ; *Exchange Bank v. Rice*, 98 Mass. 288. Upon this acceptance, anyone dealing with Barnes' check or draft had a right to rely, and the Bank of Britt undoubtedly had authority, implied as of law, to use the telegram as constituting an acceptance, and as part of the instrument itself. The agent must have known of this fact, if he believed that Barnes' check or draft had been purchased or was to be cashed by the Bank of Britt.''

Numerous other cases are cited by appellee on this point, among them *Tolerton & Stetson Co. v. Anglo-California Bank,* 112 Iowa 706, a suit on an accepted draft attached to a bill of lading; *Selma Sav. Bank v. Webster County Bank,* 182 Ky. 604 (2 A. L. R. 1136) ; *National Com. Bank v. Miller,* 77 Ala. 168 (54 Am. Rep. 50) ; *First Nat. Bank v. Currie,* 147 Mich. 72 (9 L. R. A. [N. S.] 698) ; *Blake v. Hamilton D. S. Bank,* 79 Ohio 189 (20 L. R. A. [N. S.] 290) ; *First Nat. Bank v. Leach,* 52 N. Y. 350; *Times Square Auto. Co. v. Rutherford Nat. Bank,* 77 N. J. L. 649 (134 Am. St. 811, 73 Atl. 479) ; *McAdoo v. Farmers St. Bank,* 106 Kan. 662 (189 Pac. 155).

Appellee also cites *Strauss v. American Exch. Nat. Bank,* 72 Ill. App. 314; *Metropolitan Nat. Bank v. Jones,* 137 Ill. 634 (12 L. R. A. 492 and note) ; *Tomlinson v. National G. A. Bank,* 73 Minn. 117 (75 N. W. 1028) ; *Wright v. MacCarty,* 92 Ill. App. 120; *Schlesinger v. Kurzrok,* 47 Misc. Rep. 634 (94 N. Y. Supp. 442; *Freund v. Importers & T. N. Bank,* 76 N. Y. 352; *Times Square Auto. Co. v. Rutherford Nat. Bank,* supra; *State v. Scarlett,* 91 N. J. L. 200 (2 A. L. R. 83), to the proposition that, where the holder of a check causes it to be certified by the drawee bank, the check would be considered paid, as between the holder and drawer, and *Blake v. Hamilton D. S. Bank,* 79 Ohio 189 (20 L. R. A. [N. S.] 290), to the proposition that a certification or acceptance of a check is an assignment of funds to the credit of the holder, and amounts to a deposit of that much money by the holder: and they claim that this is the effect of an acceptance, under Section 3060-a189, Code Supplement, 1913.    They also cite *Blake v. Hamilton D. S. Bank,* supra, *National Com. Bank v. Miller,* supra, *Times Square Auto. Co. v. Rutherford Nat. Bank,* supra, *Kahn v. Walton,* 46 Ohio St. 195 (20 N. E. 203), and

Section 3060-a188, Code Supplement, 1913, to the proposition that the holder of a certified check is a holder for value, as construed by the law merchant, and that to hold otherwise would defeat the very purpose of a certified check; and that the maker and all indorsers are released. They also cite *Times Square Auto. Co. v. Rutherford Nat. Bank,* supra, and other cases, to the proposition that the defense of fraud is not available to the defendant or intervener, under the circumstances of this case.

The opinion is already too long, and we shall not take the time or space to review the cases more in detail. Without further discussion, we reach the conclusion that Croke's remedy is against the land company, and that the defenses set up are not available in this action, and that, for the reasons stated, the trial court properly sustained the motion to strike, and that the case now stands for trial upon the issues raised, with the stricken parts eliminated. The judgment is affirmed, but the cause is remanded for trial.—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.